Schintgen, Appellant, vs. City of La Crosse, Respondent.

*February 3—March 21, 1903.*

*Municipal corporations: Street improvements: Assessment of bene-
fits: Reassessment: Validity of statute: "Without authority of
law:" Due process of law: Notice: Classification of cities:
Adopting provisions of general charter: Taxation for private
purpose: Exemption from assessment: Nature of pavement:
Burden of proof.*

1. Sec. 1210*d*, Stats. 1898, as amended by ch. 9, Laws of 1901 (pro-
viding that when a special assessment for street improvements
is invalid "because of such work having been done without
authority of law," or for failure to make a proper assessment
or to observe any provision of law, either in adopting any part
of the general city charter law or otherwise, a reassessment
shall be made), is valid.  The words "without authority of law"
refer to assessments which are without authority of law by
reason of defects in the proceedings, and not to such as could
not be made under any circumstances because no law author-
izes them.
2. An expense which was not legally capable of being assessed
against private property originally cannot be made a charge
against such property by reassessment proceedings.
3. Where there was a valid law authorizing the assessment at the
time the work was done, and the work, though not done under
the provisions of that law, was done in a way which the legis-
lature might have authorized, a reassessment may be author-
ized if all the essentials of due process of law be preserved to
the property owner, including an opportunity to be heard as to
the amount of his assessment.
4. Thus, if a reassessment law gives the property owner full notice
and opportunity to be heard as to the amount of his assess-
ment, it cannot be held unconstitutional because he has had no
opportunity to be heard as to the nature of the improvement
or the manner of making it, although the law authorizing the
original assessment provided for notice before the doing of the
work and for hearing as to the manner of doing it.
5. A reassessment law general in its terms and applicable to every
city in the state operating under a special charter is not im-
proper class legislation and is not a special or private law for
the assessment of taxes within the inhibition of sec. 31, art. IV,
Const.

6. The mere fact that special improvement bonds issued against property have been bought from the city by a third person and paid for, does not render the relevying of the assessment and issuance of new bonds to the holder the levying of a tax for the benefit of a private person. If the work for which the original assessment was made was a public work, the assessment or reassessment made to pay for it is an assessment for a public purpose.

7. Where the original assessment was invalid because the proceedings were conducted pursuant to sections of ch. 40a, Stats. 1898, which were supposed to have, but had not, been legally adopted by the city, a reassessment is authorized by sec. 1210d, Stats. 1898, as amended by ch. 9, Laws of 1901.

8. Where, in an action to set aside a special assessment for paving a street, it appears that by the city charter plaintiff's property is exempt from assessment for such improvement unless the pavement is a permanent one having a concrete foundation, the duty of showing that the pavement is such rests upon the city.

APPEAL from a judgment of the circuit court for La Crosse county: LAWRENCE W. HALSEY, Judge. Reversed.

This is an action in equity brought to set aside certain reassessments levied against the plaintiff's property in the city of La Crosse to pay for the paving of the street in front of said property with brick pavement. The case comes here upon the pleadings and findings, there being no bill of exceptions. The facts are that in the year 1900 the city of La Crosse entered upon an extensive system of street improvements in the city by the laying of brick pavement at the expense of abutting lots, and among other streets so improved was the street in front of the plaintiff's property. At that time the city was operating under a special charter; the same being ch. 162, Laws of 1887, as amended by certain subsequent acts. Before commencing these improvements, however, the city council attempted to adopt by ordinance sec. 925—175 and secs. 925—177 to 925—199, inclusive, of the Statutes of 1898; being a part of the general city charter. All of the proceedings for the making of the improvements in question and the levying of assessments and the issuance of improve-

ment bonds thereon, were taken under the sections of the general charter so attempted to be adopted. The plaintiff filed due and written objections to the prosecution of the work and to the levying of the assessments, but the work was completed and the assessments levied against the plaintiff's property therefor; and, such assessments not being paid, improvement bonds were issued against the plaintiff's property. June 25, 1900, an action of *certiorari* was commenced by one Boycott, another property owner, to test the validity of the ordinance aforesaid adopting certain sections of the general charter; and final judgment was rendered in said action December 11, 1900, adjudging that the attempted adoption was null and void. *State ex rel. Boycott v. Mayor,* 107 Wis. 654, 84 N. W. 242. Thereafter another action of *certiorari* was commenced by Boycott for the purpose of reversing the assessment proceedings themselves, which action resulted in a judgment by the circuit court for La Crosse county February 3, 1900, setting aside the assessments and the improvement bonds for the reason that the assessment proceedings were without jurisdiction and contrary to the city charter and the statutes of the state. February 14, 1901, the council of the city of *La Crosse* duly adopted, by ordinance, secs. 925—172 to 925—200, inclusive, of the general charter law; and subsequently a reassessment of benefits and damages was made against the plaintiff's property, and new special improvement bonds were issued under the provisions of sec. 1210*d*, Stats. 1898, as amended by ch. 9, Laws of 1901. These new improvement bonds are all held by a national bank in the city of *La Crosse,* and the city owns no part thereof. Before the making of the improvements in question, the street in front of the plaintiff's property had been twice improved, paved, and guttered according to the grade established by the council, at the expense of the plaintiff's lots, at a total cost of about eighty cents per square yard, and the present assessment amounted to $1,49 per square yard.

Upon these facts the court found that the reassessments were valid, and dismissed the complaint, and the plaintiff appeals.

For the appellant there were briefs by *McConnell & Schweizer,* attorneys, a separate brief by *Greene, Fairchild, North & Parker,* of counsel, and oral argument by *C. H. Schweizer.*

For the respondent there was a brief by *W. F. Wolfe,* attorney, and *A. C. Wolfe* and *Geo. H. Gordon,* of counsel, and oral argument by *W. F. Wolfe* and *A. C. Wolfe.*

WINSLOW, J.  The case presents the general question of the validity of sec. 1210*d,* Stats. 1898, as amended by ch. 9, Laws of 1901, which provides for the reassessment of invalid special assessments for street improvements. The general contentions made by the plaintiff are (1) that the section named is unconstitutional; (2) that, if constitutional, it is not applicable to the case at bar; and (3) that in any event the plaintiff's premises were not liable to assessment.

1. The section referred to provides, in substance, that when a street improvement has been or may hereafter be made in any city, and a special assessment made against private property therefor, and such assessment is invalid "because of such work having been done without authority of law, or for failure to make a proper assessment of benefits and damages, or to observe any provision of law, either in adopting any part of chapter 40*a* of the Statutes of 1898 or otherwise, or because of any act or defect in the proceedings upon which such assessment, certificate, sale or bond is based, or because of any provision contained in the contract for doing such work not authorized by law, the city authorities shall proceed to make a new assessment of benefits and damages in the manner required by law."  The section then prescribes certain details of the new assessment proceedings; gives the property owner the right to appeal therefrom; makes the new assess-

ment a lien upon property assessed, not exceeding the amount of the excess of benefits over damages as found by the new assessment; provides for the issuance of new assessment certificates or improvement bonds upon surrender of and in place of those previously issued, if any; and further provides that, where the invalidity is caused by failure to properly adopt a part of ch. 40a, Stats. 1898 (the general city charter law), no new assessment shall be made until all essential provisions of said chapter relating to street improvements shall have been adopted.

It will be readily seen that the amendments made to sec. 1210d by ch. 9, Laws of 1901, were made for the specific purpose of making the section in terms applicable to a case where there had been an attempted, but ineffective, adoption by a city of the provisions of the general charter law as to city improvements and assessments made thereunder. Such was the case with the assessments now before us. The city of *La Crosse* in April, 1900, attempted to adopt certain provisions of the general charter law governing the subject of street improvements, and after such action made the improvements and assessments in question here under such provisions. This court held in *State ex rel. Boycott v. Mayor,* 107 Wis. 654, 84 N. W. 242, that the attempted adoption was invalid, for failure to adopt all the material provisions of the law on that subject. Thereafter the city legally adopted all the provisions of the general charter law on the subject, and the assessment now attacked was made pursuant to the provisions of ch. 9, Laws of 1901. Thus the question of the validity of the last-named act is fairly presented. The general principle that the legislature has power to authorize the reassessment and collection of general taxes which are void for irregularities in the original proceedings is unquestioned. The power to authorize the reassessment of invalid special assessments has also been frequently asserted. As early as the case of *Dean v. Charlton,* 27 Wis. 522, it was said that it was then

too late to question the power of the legislature to pass such laws; and in *Sanderson v. Herman,* 108 Wis. 662, 84 N. W. 890, 85 N. W. 141, it was said that the authorities in support of such legislation were overwhelming, and sec. 1210*d* was directly held to be constitutional. So the general principle that the legislature has power to make such remedial laws must be considered as settled, as well as the fact that sec. 1210*d,* before its amendment by ch. 9, Laws of 1901, was a proper exercise of such power; and the only question is whether the attempt to enlarge the provisions of the law by the last-named section so as to cover a situation such as is presented here is within such power.

It is said that the act is invalid because it authorizes a reassessment when the work has been done "without authority of law," thus allowing a reassessment to be made for a work which originally could not be lawfully made a charge against the property. It is hardly necessary, perhaps, to consider this objection at length. Reassessment cannot, of course, be made to cover charges which were not authorized by law to be assessed against property under any circumstances at the time the work was done and the original assessment made. An expense which was not legally capable of being assessed against private property originally cannot be made a charge against such property by reassessment proceedings. This would be confiscation, not reassessment. *Rork v. Smith,* 55 Wis. 67, 12 N. W. 408. If the clause in question means this, then it is impossible to see how it could be sustained. But on the other hand, even if this be the necessary construction of the clause, it is not seen how the fact would vitiate those parts of the law which are unquestionably constitutional, and which do not depend in any degree upon the validity of the clause referred to. They may well stand, even though the other falls. Our duty is, however, to give all clauses a construction which will validate them, if such a construction be possible; and, under this rule, we think the clause in question, though

sweeping in its terms, should be held only to refer to an assessment which is without authority of law by reason of some material defect in the proceedings rendering it invalid, rather than to an assessment which could not be legally assessed under any circumstances, by reason of the absence of any law authorizing it.

Again, it is said that a reassessment law can only be resorted to for the purpose of correcting defects in the assessment proceedings proper, and not to validate a vice in the creating of the debt or liability, such as failure to establish a grade, or to let a contract to the lowest bidder, or other material defect in the manner of ordering or constructing the improvement itself, which are said to be jurisdictional defects. The objection is a grave one, and we have felt its force. The defects which existed in the case of *Dean v. Borchsenius,* 30 Wis. 236, were, however, just such defects, and in that case they were held to be cured by a reassessment. It must be said, however, that the exact point now made does not seem to have been considered in that case. The use of the term "jurisdictional defects" is rather confusing than helpful. It has frequently been said, in substance, that special assessment proceedings are in their nature harsh and should be construed strictly, and that any material omission or failure to follow the provisions of law in the proceedings will deprive the taxing officers of jurisdiction and invalidate the tax; but it was not to be claimed that defects in the assessment proceedings proper, as distinguished from the proceedings for making the improvement, though jurisdictional in the sense just referred to, could not be cured under the provisions of a proper reassessment law. So the fact that a defect may be properly termed jurisdictional is by no means a test.

The principle frequently stated is that the legislature may ratify and cure, through reassessment by the local authorities, that which it might have constitutionally and lawfully au-

thorized in the first instance. *Dean v. Borchsenius, supra;*
*Sanderson v. Herman, supra.* By this it is not meant that it
can provide for reassessment when there was no law author-
izing an assessment in the first instance, nor that the constitu-
tional requirement of "due process of law" can be overridden.
This court has held that charter provisions authorizing as-
sessments without notice, actual or constructive, at any time
to the property owner, are void because made without due
process of law. *Dietz v. Neenah,* 91 Wis. 422, 64 N. W. 299,
65 N. W. 500. But this notice need not necessarily be before
the improvement is made. The property owner has no con-
stitutional right to be heard as to the character of the im-
provement nor the manner of its construction. It is enough
if the law provides for notice and hearing at some time dur-
ing the proceedings on the question as to what proportion of
the tax should be assessed against his land. *Hennessy v.*
*Douglas Co.* 99 Wis. 129, 74 N. W. 983; *Meggett v. Eau*
*Claire,* 81 Wis. 326, 51 N. W. 566. It would seem neces-
sarily to follow that, if a reassessment law gives the property
owner full notice and opportunity to be heard as to the
amount of his assessment, it cannot be held unconstitutional
because the property owner had no opportunity to be heard as
to the nature of the improvement or the manner of making
it, provided there was a law in existence at the time of the
improvement authorizing such work to be done and paid for
by special assessments upon property owners. In the present
case it appears that under the provisions of the charter of
the city the common council had power to cause the street to
be improved and the expense thereof to be paid by assess-
ment upon adjoining property. Laws of 1887, ch. 162, subch.
7, secs. 1–5. It is true that these provisions provide for no-
tice to the adjoining property owners before the work is done,
and hearing as to the manner of doing the work; but, as we
have seen, this requirement was not an essential, and might
originally have been dispensed with by the legislature, pro-

vided notice was at some time during the proceedings given to the property owner and he was given a chance to be heard as to the amount of his assessment. This opportunity is given him by the reassessment law under consideration.

It appearing, therefore, that there was a valid law in existence authorizing assessments of this nature when the work was done, and that while the work in question was not done under the provisions of that law still it was done in a way which the legislature might originally have lawfully authorized, and that the reassessment law preserves to the property owner his right to be heard and all the essentials of due process of law, we think the law in question is not susceptible to the objection hereinabove discussed.

It is further objected that the law, so far as pertains to past assessments, is void because it is improper class legislation and hence is a special or private law for the assessment of taxes and within the inhibition of sec. 31, art. IV of the constitution. In this contention, reliance is placed upon *Boyd v. Milwaukee,* 92 Wis. 465, 66 N. W. 603. It is entirely possible that the reasoning of that case may be subject to just criticism, but whether it be good law or not we are well convinced that it does not control this case, in which a law general in its terms and applicable to every city in the state operating under a special charter is attacked. It has already been held that cities operating under special charters are *ex necessitate* a proper constitutional class and subject to legislation as such. The question of classification is therefore no longer open. The law applies to the entire class, and the fact that all the cities in the class may not be in a situation to make use of its provisions does not make it special or private.

It is argued that the reassessment law is a law seeking to impose a tax on property for private use. The basis of this argument is that the special improvement bonds which were issued against plaintiff's property have been bought by a third person, that the city has received the money therefor, and

that the holder cannot recover of the city therefor; hence that the tax is in effect paid and that the relevying of the assessment and issuance of new bonds to the holder is in effect a levying of a tax for the benefit of a private person and not for a public purpose. The argument is specious, and seems to gain support from the case of *Budge v. Grand Forks,* 1 N. D. 309, 47 N. W. 390, 10 L. R. A. 165. We have not found ourselves able to agree with it, however. The improvement bond is practically but another form of a special assessment certificate which gives the property owner an opportunity to pay his assessment in instalments running through a period of years, instead of paying the whole amount of the assessment at once. The bond is a lien upon the parcel of land which it covers, just as a certificate is. It is collected like other taxes, and the law provides that its holder shall have all the right, title, and interest of such city in and to the assessment on which it is based. Stats. 1898, secs. 925—190 to 925—197*a.* The argument that a defect in the proceedings could not be cured by a reassessment law when the bond has been issued and sold would seem to mean that there could be no reassessment when a certificate had been issued to the contractor or sold by the contractor to a third person. No material difference in the two cases now occurs to us. The case of *Sanderson v. Herman,* 108 Wis. 662, 84 N. W. 890, 85 N. W. 141, was one in which a certificate had been issued and was in the hands of a third person, not the contractor, and the reassessment in that case was held valid; but the point now raised was not suggested. It is certain that the holder of a valid certificate or bond has the absolute right to have the assessment collected for his benefit by the machinery of taxation. The fact that the money is collected for his benefit primarily, and not to go into the treasury of the city, has never been supposed to mean that the collection was made for a private purpose. The logic of the argument now made, however, would lead to just this conclusion. The true cri-

terion doubtless lies in the character of the work itself. If it be a public work, capable of assessment against private property, the assessments made to pay for it are assessments for a public purpose, and the tax when paid is paid for a public purpose, though the money paid may go to reimburse a private party by reason of the fact that he has advanced the money temporarily to meet that purpose. In this view, a reassessment manifestly cannot be held to be a proceeding to collect money of the citizen for a private purpose; nor can it be held that the tax has been paid so as to prevent any steps for its collection. While some minor objections were made to the constitutionality of the law, it is believed that the foregoing considerations dispose of all the objections which are vital or important.

2. If the law is, as we have held, a valid exercise of legislative power, we have been unable to see why it is not applicable to the case in hand. It is said that it is admitted by the pleadings that the original assessments were set aside because of the lack of jurisdiction, and from this it is argued that there can be no reassessment in any event. As we have seen, the expression "lack of jurisdiction" in special assessment proceedings does not necessarily mean that there was no authority of law to levy the assessment under any circumstances. It covers as well a case where there was legal authority to make the assessment, but when there has occurred some material defect or omission in the proceedings at any stage. It appears by the findings that the proceedings here were conducted pursuant to the provisions of those sections of ch. 40a, Stats. 1898, which were supposed to have been legally adopted by the city; hence they did not conform to those provisions of the special charter of the city on the subject. Thus it affirmatively appears that the defects were defects in procedure, not the result of lack of power. Being defects in procedure, it makes little difference whether it be said that the proceedings were invalid because of failure to observe the provisions of

the special charter, or because of failure to properly adopt the provisions of ch. 40*a*. In either event, they are covered by the law in question.

3. The third claim made is that the evidence shows that the plaintiff's premises were not liable to assessment for the improvement. The special charter of the city (sec. 2, subch. 7, ch. 162, Laws of 1887) provides that when a street has been once constructed to the established grade and paved at the expense of adjoining lots, the expense of maintaining and renewing the pavement shall be paid out of the general fund of the city. It appears by the findings that the streets adjoining the plaintiff's lots had both been paved to the established grade at the expense of the lots long prior to the present improvement, at an expense of about eighty cents per square yard. From these facts the result would unquestionably follow that the lots were exempt from assessment for the improvement at the time it was made, and, if exempt from original assessment, necessarily exempt from reassessment. On the part of the city an attempt is made to avoid this result by reliance upon the provisions of sec. 6, ch. 310, Laws of 1893, which section provides that no property fronting on any street shall be exempt from any assessment of benefits on account of the paving thereof with a permanent pavement *having a concrete foundation* until such property shall have paid for street pavements in front thereof, in the aggregate, the sum of $3 per square yard. This act applies to all cities having more than 20,000 inhabitants, of which *La Crosse* is one. It may well be that this act would cure the difficulty if it appeared that the present pavement were a permanent pavement *having a concrete foundation*. It was a brick pavement, and hence permanent; but there is absolutely no proof or suggestion in the case that it was laid upon a concrete foundation, and we cannot assume that such was the fact. When it appeared that the plaintiff's premises were exempt from assessment unless a certain particular state of facts ex-

isted, the duty rested on the city of showing that such state of facts did actually exist. This was not shown, and hence in the present case, for this reason alone, the reassessment in question must be set aside.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment for the plaintiff in accordance with this opinion.