ELK RIVER COAL & LUMBER Co., Petitioner, Appellee, v. A. B. FUNK, Industrial Commissioner, et al., Respondents, Appellants.

No. 43682.

JANUARY 19, 1937.

REHEARING DENIED MAY 17, 1937.

Havner, Flick & Powers, for appellee.

Stewart & Oransky, for appellants.

HAMILTON, J.—The Elk River Coal & Lumber Company is a West Virginia corporation with its home office located at Charleston, West Virginia. It also maintains a branch office at Columbus, Ohio. The claimant's husband, Harry K. Briggs, was employed by this company to work exclusively in Iowa, his employment commencing in 1928 and continuing uninterrupted until his injury and resultant death. The record does not disclose where the contract was entered into. His injury occurred on December 8, 1931, and death resulted July 31, 1932, at his home in Des Moines, Iowa. He is survived by his widow, Cora M. Briggs. At the time of his death and for some time prior thereto, Mr. Briggs' territory comprised the entire state of Iowa, with some 500 customers or coal dealers throughout the state to whom he sold coal, collected bills, adjusted difficulties and complaints, using his own judgment as to extending credit and otherwise transacting the business of the company in connection

with the sale and delivery of coal to its customers in Iowa. He kept in daily contact with the company as to all this business. He was paid a salary of $175 per month, with an allowance of seven cents per mile for car expense and a full unrestricted allowance for all hotel expenses. He had the right to choose his own route. During all the time employed, he was a resident, citizen and voter of Des Moines, Iowa, but the company maintained no office in this state and was at no time licensed to do business in this state, and except for the employment of one Mr. Healy, for a short period of time, has had no agent or representative in the state of Iowa since Mr. Briggs' death. Petition for arbitration on the part of the widow, Mrs. Cora M. Briggs, was filed with the Iowa Industrial Commissioner on September 15, 1933, and after some delay the matter was finally set for hearing at Allison, Iowa, within the county where the accident occurred which caused the death of Mr. Briggs. The company through its attorneys filed a special appearance challenging the jurisdiction of the commissioner to hold the hearing, which special appearance was overruled by the commissioner. Thereupon the company applied to the district court of Butler county for a writ of certiorari which was granted, and upon hearing before the court was sustained on the ground that the commissioner had no jurisdiction of this company, and from this ruling of the court the commissioner has appealed.

█▌█ It is insisted by the commissioner that there was error in the court's ruling wherein he held that the commissioner was acting illegally and without jurisdiction to proceed in said investigation and hearing. The legal battle is waged over the sufficiency of the notice of the hearing. The Iowa compensation statute, section 1459, Code of 1935, provides:

"Notice and service. Any notice to be given by the commissioner or court provided for in this chapter shall be in writing, but service thereof shall be sufficient if registered and deposited in the mail, addressed to the last known address of the parties, unless otherwise provided in this chapter."

Numerous notices were sent by registered mail to the company, some of which were addressed to the company at its office in Columbus, Ohio, and others to the home office in Charleston, West Virginia. Service of notice was also made upon the Secretary of State, and the notices mailed to the company by the

Secretary of State, under the provisions of section 8421, Code of 1935. There is no dispute over the fact that the company received these notices through the mail and therefore had actual notice and knowledge of the hearing and of the proceedings pending before the industrial commissioner. In fact, the company acknowledged receipt of certain of the notices and wrote the commissioner advising him that the attorneys now representing the appellee would look after the matter. It is the earnest contention of the appellee that the commissioner acquired no jurisdiction of the company through this method of service, counsel for appellee contending for the well-known principle of law that judgment in personam cannot be legally obtained on a nonresident by service of process outside the state where the cause of action is pending, and he cites the leading cases in this state of Raher v. Raher, 150 Iowa 511, 528, 531, 129 N. W. 494, 500, 35 L. R. A. (N. S.) 292, Ann. Cas. 1912D, 680, and Fisher & Van Gilder v. First Trust Joint Stock Land Bank, 210 Iowa 531, 231 N. W. 671, in support of his contention. The opinion in the Raher case quotes liberally from Pennoyer v. Neff, 95 U. S. 714, 727, 24 L. Ed. 565, a few excerpts from which will indicate the ground upon which the appellee bases its contention:

"No sovereignty can extend its process beyond its own territorial limits to subject either persons or property to its judicial decisions. Every exercise of authority of this sort beyond this limit is a mere nullity and incapable of binding such person or property in any other tribunals. * * * 'No state has authority to invade the jurisdiction of another and by service of process compel parties there resident or being to submit their controversies to the determination of its courts.' * * * 'Due process of law would require appearance or personal service before the defendant could be personally bound by any judgment rendered.' * * * 'Since the adoption of the fourteenth amendment to the federal Constitution, the validity of such judgments may be directly questioned and their enforcement in the state resisted, on the ground that proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction do not constitute due process of law.'"
The Iowa court in commenting on this Neff case says:

"It is plain therefore that whatever is said in Pennoyer v. Neff, with reference to whether a personal judgment against a

defendant not served with process or notice within the state and not entering an appearance *or otherwise voluntarily conferring jurisdiction upon the court,* is intended to be applicable alike to cases of residents and nonresidents, and these expressions of view leave no possible doubt in our minds as to what the Supreme Court of the United States would hold as to the validity of the judgment now before us." (Italics ours.)

There can be no question about the principle of law thus announced. It therefore follows that unless the appellee entered an appearance or otherwise voluntarily conferred jurisdiction upon the commissioner to conduct the hearing and make the award as between the claimant and the employer, that the commissioner would have no jurisdiction over the employer, a foreign corporation. It is a well recognized principle of law that the legislature may enact laws permitting service of original notice, process or summons upon a foreign corporation not authorized to do business in this state within prescribed constitutional limitations. American Asphalt Roofing Corp. v. Shankland, 205 Iowa 862, 219 N. W. 28, 60 A. L. R. 986. Typical statutes of this character are found in sections 11072 and 11079 of the Code. However, it has always been a necessary prerequisite to the validity of such service under such statutes that it be found that at the time of the service of the process or notice the foreign corporation was present in the state, that is, that it was carrying on business in the state. One of the leading cases construing such a statute and holding such a service valid is the case of International Harvester Company v. Commonwealth of Kentucky, 234 U. S. 579, 34 S. Ct. 944, 946, 58 L. Ed. 1479, wherein the court, in passing upon this matter said:

"This course of conduct of authorized agents within the state in our judgment constituted a doing of business *there* in such wise that the Harvester company might be fairly said to have been *there, doing business,* and amenable to the process of the courts of the state." (Italics ours.)

In other words, the foreign corporation must be in this state, which fact may be shown by a course of doing business within the state through an agent. Another prerequisite is that the agent upon whom service is made must be such at the time service is made upon him, and if these requisites are not established, the

service is not good and violates the due process clause of the Federal Constitution. See also Thornburg v. James E. Bennett & Co., 206 Iowa 1187, 221 N. W. 840. At the time service was attempted in this matter there was no agent within the state of Iowa, representing the employer, and therefore the provisions of the foregoing statute, if applicable, were not available to the claimant or to the appellant. Appellant, however, did attempt to avail himself of the provisions of section 8421 of the Code of 1935, and service was made upon the Secretary of State and the Secretary of State forwarded said notice to the company in accordance with the provisions of said section. It will be noticed that this section only deals with service of notice or process in civil suits in court, and this proceeding not being a civil suit in court, the section must be held not applicable.

It will be noticed that there is no provision in the Workmen's Compensation Act providing for substituted service upon anyone within this state. The only provision for notice and service is found in section 1459, supra. The procedure outlined in the act itself, insofar as residents of this state are concerned, we think is sufficient to meet the requirements of due process of law. Therein the legislature has defined the process of law and procedure necessary to be observed by the administrative tribunal, namely, the board of arbitration and the industrial commissioner in administering the Workmen's Compensation Act. The statute provides a method of conveying actual notice to the employer and this affords him an opportunity to be heard and to present his side of the controversy before a legally constituted body, with the right of appeal to the district court if not satisfied with the award of the board or the decision of the commissioner. In cases involving proceedings before administrative bodies in matters of taxation, and before examining boards and departments of health in administering laws concerning the practice of certain professions and laws having to do with public health, and other administrative bodies, process and procedure which afforded an opportunity to be heard, with right of appeal, have been held sufficient as to due process. Craven v. Bierring, 222 Iowa 613, 269 N. W. 801; Smith v. State Board of Medical Examiners, 140 Iowa 66, 117 N. W. 1116; Louisville & N. R. Co. v. Schmidt, 177 U. S. 230, 20 S. Ct. 620, 44 L. Ed. 747. A similar provision of the Wisconsin Workmen's Compensation Act, providing for the giving of notice by mail in compensation cases,

was held valid against an attack on the ground that it was unconstitutional and violated the due process clause. The Wisconsin court upheld the law and said:

"The commission is an administrative board merely. It is common knowledge that such boards are frequently given power to investigate and determine facts without notice to the parties of each successive step in the proceedings. The proceedings before such boards are not expected to be as formal and cumbrous as the proceedings of courts; indeed, the greater flexibility which such bodies must possess if they are to discharge their duties seems to demand greater freedom of action. If notice, either actual or constructive, of the commencement of the proceedings before such a body be required to be given to the parties interested, and they be given full and free opportunity to be heard and present evidence, it is generally held sufficient, even though notice of intermediate steps in the proceedings be not required or given. Schintgen v. La Crosse, 117 Wis. 158, 94 N. W. 84. In case of a board like the present, which only acts on the rights of the parties which have consented that it may so act, the reason of the rule is far stronger." Borgnis v. Falk Co., 147 Wis. 327, 133 N. W. 209, 220, 37 L. R. A. (N. S.) 489. In this Wisconsin case the matter arose in a general attack upon the constitutionality of the law, and there was not presented a specific instance of an attempted service by mail addressed to a foreign corporation, as in the instant case.

It must be borne in mind that the specific question before us is not the question of whether or not the claimant has a right to recover. The specific question relates to jurisdiction. We have here then the following undisputed facts: The employee, Mr. Briggs, was and had been ever since his employment in 1928, a resident, citizen and voter with his domicile in the city of Des Moines, Polk County, Iowa, from which point he carried on the business of the company throughout the state of Iowa over a period of nearly five years up to the date of his death. The employer was a foreign corporation, doing business in the state of Iowa without a permit, and no permit had ever been applied for, and no one had been designated as an agent upon whom service of notice could be had under the provisions of section 8421 of the Code. The company ceased doing business in this state very shortly after the death of Mr. Briggs, and at the time

of the attempted service by registered mail the company had ceased to do business in this state and had no one in this state upon whom service of notice could be legally made or had.

The contract of employment was for services to be performed exclusively in the state of Iowa. The general rule is that where a contract is to be performed wholly outside of the state in which the contract was made, the parties are presumed to adopt the law of the place of performance as the law of the contract. Conflict of Laws, 12 C. J., page 450, section 31; Arnold v. Potter, 22 Iowa 194; Boyd v. Ellis, 11 Iowa 97. This same principle was applied to a contract of employment under compensation statutes by the Nebraska court in the case of Watts v. Long, 116 Neb. 656, 218 N. W. 410, 412, 59 A. L. R. 728, wherein the court said:

"The general rule is well established that, where the place of the contract and place of performance are the same, the law of the place where made will govern the contract; but it is equally well established that, where the contract is made in one place to be executed in another, it will be governed by the law of the place of performance. Andrews v. Pond, 13 Pet. 65, 10 L. Ed. 61; London Assurance v. Companhia De Moagens, 167 U. S. 149, 17 S. Ct. 785, 42 L. Ed. 113; Hall v. Cordell, 142 U. S. 116, 12 S. Ct. 154, 35 L. Ed. 956; Leader Specialty Co. v. Chapman, 85 Ind. App. 296, 152 N. E. 872."

Therefore, we must conclude that the law of this state will govern the contract of employment, this being a contract to be performed wholly within the state of Iowa. This brings us to the crucial question in the case. In at least two cases where the contract of employment was entered into in the state of Iowa and where the employer had its place of business in the state of Iowa, and where the injury occurred outside of the state of Iowa, this court held that compensation was recoverable under the Iowa law. Pierce v. Bekins V. & S. Co., 185 Iowa 1346, 172 N. W. 191; Cullamore v. Groneweg & Schoentgen Co., 219 Iowa 200, 257 N. W. 561. Those cases are authority for the proposition that the Iowa law is what is termed elective, the law itself containing a provision that unless notice is given to the contrary, both the employer and employee are conclusively presumed to elect to come under the provisions of the statute. Code section 1363, section 1364, Code of 1935. See also Van Gorkom v.

O'Connell, 201 Iowa 52, 206 N. W. 561. The foregoing Iowa cases stress the fact that the contracts were entered into in Iowa and the corporations themselves were situated in Iowa and while the services to be performed in the Cullamore case were almost wholly outside of the state and the agent himself resided outside of the state, yet he did make frequent visits to the home office in Council Bluffs in connection with his business, and therefore his services were under the facts referable to the business located within the state of Iowa, although his services as a salesman were almost entirely confined to the state of Nebraska which was separated from the location of the Iowa concern by the Missouri River. In both the Pierce case and the Cullamore case, supra, the court specifically found that the Iowa Workman's Compensation statute must be construed as a part of the contract of employment. This finding is made without any limitation as to the scope or breadth of its meaning. However, it must be held that if a contract of hire made in this state is to be performed wholly outside of this state, the' Iowa law would not apply. Section 1377 of the act provides:

"Implied acceptance. Where the employer and employee have not given notice of an election to reject the terms of this chapter, every contract of hire, express or implied, shall be construed as an implied agreement between them and a part of the contract on the part of the employer to provide, secure, and pay, and on the part of the employee to accept compensation in the manner as by this chapter provided for all personal injuries sustained arising out of and in the course of the employment."

Section 1380 provides that "the rights and remedies provided in this chapter for an employee on account of injury shall be exclusive of all other rights and remedies" etc. The Workmen's Compensation Law was enacted by the 35th General Assembly of the State of Iowa and is found in Chapter 147, Laws of the 35th General Assembly and the provisions of sections 1377 of the Code of 1935 are found in subdivision (c) (4) of section 1 of the act, and are practically in the same language, except that the phrase "in the manner as by this chapter provided" contained in the code section reads in the original bill "in the manner as by this act provided". In other words, it is not limited to a chapter but to the entire act. The act originally was not divided into chapters. This was done by the code commissioners

and the word "act" was changed to the word "chapter". Therefore, in arriving at the intention of the legislature we must look to the terms of the original act, and when this is done the plain meaning of section 1377 of the code must be that where the employer and employee have not given notice of an election to reject the terms of the Workmen's Compensation Act, every contract of hire, express or implied, shall be construed as an implied agreement between them, and a part of the contract on the part of the *employer* to *provide, secure and pay,* and on the part of the *employee* to *accept compensation in the manner as by the act provided* for all personal injuries sustained arising out of and in the course of employment. In the case before us, no notice of rejection was given by either employer or employee. Therefore, they are conclusively presumed to be bound by the act. This being true, the remedy provided is exclusive of all other remedies. The rights and liabilities of the parties are fixed by the act itself. We therefore have a situation where the employer is liable, where the employee has no other remedy, and if she fails to recover in this state she will be without remedy elsewhere (unless under the compensation act of West Virginia, should she make application there, the court of that state should hold that the services of the employee in Iowa were incidental and referable to the business of the company located in the state of West Virginia, which indeed is a remote possibility).

It is the contention of appellant that since this court has held that the compensation act is read into the contract of employment and since the corporation was in this state by virtue of its carrying on and transacting business in this state through its agent, Mr. Briggs, at the time of his injury, that it thereby consented to the procedure and to the jurisdiction of the Iowa tribunal, insofar as liabilities were created under the Iowa Workmen's Compensation Act, and he cites in support of this contention Restatement of Conflict of Laws, page 81, which holds that a state can exercise through its courts jurisdiction over an individual which consents to such exercise of jurisdiction, and under comment the following illustration of the principle is given: "A makes a contract with B. In the contract it is agreed that in an action brought to enforce a liability arising out of the contract, service of process may be made by mailing a summons to a designated address. If this provision is carried out and followed, the court has jurisdiction." And Restatement

of Conflict of Laws, Par. 90, provides that the same rule applies to a foreign corporation that has consented. To substantiate this contention of appellant it will be necessary to hold that the phrase "in the manner as by this chapter provided" contained in section 1377 of the code is all inclusive, and that it not only has reference to the rights and liabilities, but includes jurisdictional matters and matters of procedure and method of serving notice and process, without regard to state boundary lines, and that section 1459 referring to notice and service must be read into the contract as an implied agreement, *as one of the covenants of the contract, the same as though this section of the code were written into the contract and signed by the parties, and continued to be binding even after the employer had removed from this state.* We do not believe the legislature so intended. To so hold would violate the Fourteenth Amendment to the Constitution of the United States under the holdings of the United States Supreme Court. The legislature had no constitutional power or authority to acquire jurisdiction over a citizen of a foreign state by service outside of the state of Iowa, by registered mail sent to an address beyond the borders of this state, and such service did not confer jurisdiction upon the commissioner to render a decision fixing a personal liability upon the appellee corporation located in the state of West Virginia. To hold otherwise would render section 1459 unconstitutional. Every presumption must be indulged in support of the constitutionality of an act, and it will be presumed that the lawmaking body intended the law to have force and effect within the constitutional limitations. A federal question being involved, we must determine the same in harmony with the decisions of the Supreme Court of the United States. American Asphalt Roofing Corporation v. Shankland, 205 Iowa 862, at page 864, 219 N. W. 28, 60 A. L. R. 986. A long list of federal cases are cited in the Shankland case which deal with the question of service upon a foreign corporation and by analogy and on principle bear directly on the legal question here involved. .

Appellant's contention that the employer enjoyed the benefits of transacting business in this state without taking out a permit for a period of five years, and as soon as this accident occurred withdrew from the state, and now comes into this court and sets up its own wrong, in an attempt to thereby escape liability, is not lost sight of. This conduct, even though as repre-

hensible as the appellant contends, will not suffice as a legal basis for the solution of the question and will not supply jurisdiction otherwise wanting.

Consent to the mode of procedure involving service of notice of hearing by registered mail was no doubt binding upon the appellee so long as it had its situs within this state. When the notice was served in this matter appellee was no longer located here. This court as early as the year 1860 in the case of Weil et al., v. Lowenthal, 10 Iowa 575, quoted with approval from Story's Conflict of Laws which says: "No sovereignty can extend its process beyond its own territorial limits to subject either person or property to its judicial decisions." In this case the court said: "The constitution of our State does not give, nor can the legislature by any enactment confer, upon the District Court, jurisdiction over the person of a citizen of another state. This doctrine is so well settled, and carries with it so much common sense and justice, that we regard it as useless to add anything further in support of it." This matter is thoroughly considered in the case of Pennoyer v. Neff, supra, wherein we find this statement: "Process sent to him out of the state, and process published within it are equally unavailing in proceedings to establish his personal liability." See also Lonkey v. Keyes Silver Mining Co., 21 Nev. 312, 31 Pac. 57, 17 L. R. A. 351; Clarke v. Carlisle Foundry Co., 150 Misc. 710, 270 N. Y. S. 351; Vaughn v. Love (Pa.) 188 Atl. 299.

The appellee having voluntarily entered into a contract performable wholly and exclusively in Iowa, the laws of Iowa became a part of the contract, as much so as if actually entered into in this state. Having entered this state by means of actually engaging in business in this state, even though it had no permit, it became an employer in this state, and the relation of employer and employee existed, and failing to give notice of rejection of the compensation act, both parties became bound by said act, and no other contract with relation to the rights and liabilities of the parties is permissible. The employer then while in this state, even though here only constructively by reason of engaging in business here, consented to all the provisions of the law and procedure, including the method of serving notice on itself, and the injury having accrued while so engaged in conducting such business growing out of and in the course of such business, it could not escape liability by withdrawing from the

state after the injury had occurred, and the rights and liabilities of the parties have become irrevocably fixed, provided there is any means by which the tribunals of this state may acquire jurisdiction of the appellee. The cause of action having accrued during the time it was still in this state, this status for the purpose of determining the rights and liabilities of the parties would survive. Zendle v. Garfield Aniline Works, (D. C.) 29 F. (2d) 415, 416; Groel v. United Electric Company, 69 N. J. Eq. 397, 60 Atl. 822.

However, before this right of action may be enforced and converted into a personal liability or judgment against a citizen or corporation of a foreign state, there must be someone remaining within the jurisdiction of this state upon whom process may be served. Numerous statutory provisions similar to sections 8420 and 8421 of the Code relating to service of notice of an action in court may be found in our code, but the legislature has not seen fit to designate anyone within this state upon whom substituted service of notice may be had as to a nonresident employer, in a proceeding before the board of arbitration or industrial commissioner. If it had designated the industrial commissioner or the secretary of state, or some other officer having a permanent abode in the State of Iowa, as in the case of civil suits to enforce liabilities against foreign corporations and insurance companies, the right to serve process would still exist even though the corporation employer had removed from the state where the cause of action had accrued during the time it still remained within the state. There are some decisions to the contrary, but the cases are reviewed in Zendle v. Garfield Aniline Works, supra, and it is there stated:

''The defendant contends that it is an indispensable condition to legal service upon a foreign corporation that it be actually carrying on business within the state at the time of service. While the language used in some of the cases lends support to this contention, the great weight of the authorities is otherwise.'' See also Frazier v. Steel & Tube Co., (1926) 101 W. Va. 327, 132 S. E. 723, 45 A. L. R. 1442, a well-considered case where the authorities are reviewed.

We do not lose sight of the fact that this is a hearing before an administrative board, and it is true that the decision of the commissioner is not in its strict technical sense a personal

judgment, but it is a personal liability and a summary method is provided by statute for converting the decision of the commissioner into the form of a judgment or decree by transcripting the proceedings to the district court. (Section 1465 of the Code.)

If the statute provided that on appeal to the district court from the decision of the industrial commissioner the trial before the court was de novo, it might be said that the appellee would still have its day in court with the right to be heard. Farm Investment Co. v. Carpenter, 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918, at page 947; Speer v. Stephenson, 16 Idaho 707, 102 Pac. 365. But under the Iowa Workmen's Compensation Act, the power of the court on appeal is specifically limited and no additional evidence is permissible. Section 1452, Code 1935.

We therefore hold that the notice by registered mail sent to the appellee at an address outside of the state of Iowa was insufficient to confer jurisdiction upon the commissioner to conduct the proceedings.

 No question was raised by the appellant with reference to appellee's right to appear specially before an inferior tribunal. It is doubtful whether section 11088 relating to special appearance is applicable to proceedings before an administrative body or board. However, in the absence of a statute denying the right to specially appear, by the great weight of authority a special appearance does not give the court jurisdiction of the person. 4 C. J. 1368; 3 Am. Juris. 810, section 42. For many years in this state an appearance for any purpose conferred jurisdiction. Section 3541, Code 1897. But by chapter 162, Laws of the 34th General Assembly, this section was repealed and the law as contained in sections 11087 and 11088 was enacted in lieu thereof. Prior to the time of the enactment of a statute to the effect that appearance for any purpose conferred jurisdiction, it was the holding in this state, in accordance with the great weight of authority, that one did not waive objection to the jurisdiction of the court by special appearance. Weil v. Lowenthal, 10 Iowa 575.

Therefore, it would seem that the appellee was within its legal rights in making special appearance to question the jurisdiction of the industrial commissioner. The court is thus confronted with a situation which it abhors, where it is compelled to face a litigant with an undoubted, valid and just claim, which

1236

in our judgment is only enforcible before the industrial commissioner under the Workmen's Compensation Act of this state, with no means provided by the laws of this state to acquire jurisdiction of the one who should respond in damages, a right for which a remedy is afforded, but no method of acquiring jurisdiction of the person of the employer exists. We have sought in vain by a long and tedious independent examination of many authorities to find some slender cord to lower this widowed claimant from her perilous position, even though by the back window, as the harlot Rahab lowered the spies, and regret that we have been unable to find any avenue of escape. It therefore follows that the judgment of the trial court must be and is hereby affirmed.—Writ sustained.

RICHARDS, C. J., and ANDERSON, PARSONS, DONEGAN, and MITCHELL, JJ., concur.