## 17040

THE STATE, Respondent, v. RUFUS CONALLY, Appellant

(88 S. E. (2d) 591)

508

*John M. Schofield, Esq.*, of Walhalla, *for Appellant*.

*Rufus Fant, Esq., Solicitor,* of Anderson, *for Respondent,*

*John M. Schofield, Esq.,* of Walhalla, *for Appellant, in reply.*

July 26, 1955.

Legge, Justice.

At the November, 1954, term of the Court of General Sessions for Oconee County, appellant pleaded guilty to the charge, for which he had been indicted, that on July 3, 1954, he "did wilfully and unlawfully have in his possession alcoholic liquors which did not have the South Carolina revenue stamps affixed to the container and containers thereof, against the form of the statute in such case made and provided * * *." Before imposing sentence, the presiding judge in open court questioned the defendant and the officers and ascertained the following facts, which are undisputed: that on the date mentioned in the indictment the officers had gone to appellant's home and there found about a quart of alcoholic liquor in an unstamped half-gallon fruit jar, and also five or six cases of empty fruit jars that smelled of alcohol; that the offense was appellant's second, he having in 1953 paid a fine in a magistrate's court in Oconee County for having illegal liquor in his possession; and that over a period of about five years, appellant had on four occasions paid fines for drunkenness and disorderly conduct.

Thereupon appellant was sentenced to be confined upon the public works of Oconee County, or in the State Penitentiary, at hard labor, for a term of eighteen months. From this sentence he appeals, charging, in a single exception that "the court erred in passing and imposing such severe and excessive sentence; said sentence violating, in view of the facts involved, the constitutional provision against cruel and unusual punishment".

This court has no jurisdiction to disturb, because of alleged excessiveness, a sentence which is within the limits prescribed by statute, unless: (a) the statute itself violates the constitutional injunction, Article 1, § 19, against cruel and unusual punishment, or (b) the sentence is the result of partiality, prejudice, oppression, or corrupt motive. *State v. Scates,* 212 S. C. 150, 46 S. E. (2d) 693; *State v. Kimbrough,* 212 S. C. 348, 46 S. E. (2d) 273; *State v. Huffstetler,* 213 S. C. 319, 49 S. E. (2d) 585; *State v. Phillips,* 215 S. C. 314, 54 S. E. (2d) 901; *State v. Goodall,* 221 S. C. 175, 69 S. E. (2d) 915; *State v. Hall,* 224 S. C. 546, 80 S. E. (2d) 239.

In the instant case, the constitutionality of the statute is not questioned, nor does appellant charge partiality, prejudice, oppression, or corrupt motive. If, therefore, the sentence was within the limits prescribed by the statute under which appellant was indicted, his appeal must fail. It may be doubted that his exception properly raises the issue of whether or not the sentence imposed upon him exceeded the maximum prescribed for his offense by the statute under which he was indicted; but, resolving such doubt in his favor, we proceed to consideration of that issue.

Section 14 of the Alcoholic Beverage Control Act of 1945, Act No. 211, XLIV Stat. at Large 337, reads as follows:

"Section 14:

"(a) It shall be unlawful for any person to manufacture, store, keep, receive, have in possession, transport, ship, buy,

sell, barter, exchange or deliver any alcoholic liquors except in accordance wih the provisions of this Act, except liquors acquired in a legal manner.

"(b) It shall be unlawful for any person to purchase, or otherwise procure, within this State any alcoholic liquor other than that purchased from licensed dealers within the State as provided for in this article, and any person found in possession of any bottle or other package containing alcoholic liquor without having affixed the revenue stamps thereto, either or both, shall be guilty of a misdemeanor.

"(c) It shall be unlawful for any person to store, or have in possession any alcoholic liquors in his, her or its place of business other than a licensed liquor store. A place of business shall be, and include, any place where goods, wares, or merchandise are sold or offered for sale, or distributed, and also places of amusement. A place of business shall also include residences and transportation vehicles when sale of any merchandise is made therefrom. A place of business shall also include outbuildings, warehouses and garages, when adjacent to or used in connection with any place of business where any goods, wares or merchandise are sold, or offered for sale, or distributed therefrom.

"(d) It shall be unlawful for any person under the age of 21 years to work as an employee or otherwise in a retail, wholesale or manufacturing liquor business or business establishment, and it shall be unlawful for any person knowingly to employ any person under the age of 21 years in any such business or business establishment.

"(e) It shall be unlawful for any person to drink alcoholic liquors on the premises of any retail, wholesale or manufacturing alcoholic liquor business or business establishments.

"(f) It shall be unlawful for any person to manufacture, sell, barter, exchange, receive, deliver, store or keep in possession within this State any alcoholic liquors except as provided in this Act, and it shall be unlawful for any per-

son to accept, receive or have in possession any alcoholic liquors for unlawful use under the provisions of this Act.

"(g) It shall be unlawful to sell any alcoholic liquors on Sunday or on election days, or during periods of local or State emergency proclaimed by the Governor in the interest of law and order or public morals and decorum, full authority to proclaim which is hereby conferred upon the Governor in addition to all other powers in him now reposed.

"(h) It shall be unlawful for any person to advertise any alcoholic liquors by means of billboards along public highways and streets.

"(i) Every violation of any provision of this Act shall be a misdemeanor and, upon conviction, shall be punished as follows:

"(1) For the violation of the provisions of sub-sections (b) (d) and (e) of this Section a fine of not more than One Hundred ($100.00) Dollars or imprisonment of not more than fifteen (15) days.

"(2) For each violation of any other provision of this Act, except where a different punishment is expressly provided, a fine or imprisonment in the discretion of the Court of General Sessions."

It will be observed that "possession" is referred to in four of the eight subsections which declare what "shall be unlawful", namely, subsections (a), (b), (c) and (f). In subsections (a) and (f) the word appears in connection with general provisions declaring it unlawful for any person to "manufacture", "store", "keep", "receive", "transport", "ship", "buy", "sell", "barter", "exchange" or "deliver" alcoholic liquors "except in accordance with the provisions of this Act", or "for unlawful use under the provision of this Act." Subsections (b) and (c) are more specific. In subsection (c), storage or possession of "any alcoholic liquors" in any place of business other than a licensed liquor store is declared to be unlawful. Subsection (b) specifies

two separate, but related, offenses, *viz.*: (c) purchase or procurement within this State of any alcoholic liquor except from a licensed dealer; and (2) possession of alcoholic liquor in an unstamped bottle or other container.

The offenses defined in subsections (b), (d) and (e) are made punishable, under subsection (i), by "a fine of not more than One Hundred ($100.00) Dollars or imprisonment of not more than fifteen (15) days".

Section 94 of Article I of the 1951 General Appropriations Act, Act No. 379, XLVII Stat. at Large, 546, 655, reads as follows:

"Section 94. Sub-Section "1" of Section 14 of Act No. 211, Acts of 1945, known as "The Alcoholic Beverage Control Act of 1945," is hereby stricken out and the following inserted in lieu thereof:

" 'Section 14, sub-section (1) : for the violations of subsections (b), (d) and (e) of this section, on the first conviction or plea of guilty a fine of not more than One Hundred ($100.00) Dollars or imprisonment of not more than thirty (30) days, and on each subsequent conviction or plea of guilty, a fine of not more than One Thousand ($1,-000.00) Dollars, or imprisonment for not more than one (1) year, either or both, at the discretion of the Trial Judge'."

(There was no subsection 1 of Section 14. The subsection obviously intended to be amended was (i) (1).)

By Section 10 of Part III of the 1951 Supplemental Appropriations Act, Act No. 380, XLVII Stat. at Large 710, 724, it was declared that Article I, Section 94 (among others) of the General Appropriations Act just mentioned "shall constitute a part of the permanent laws of the State of South Carolina; and the Code Commissioner is hereby authorized and directed to include these Articles and Sections in the 1952 edition of the South Carolina Code of Laws, along with other permanent laws of the State". The propriety of incorporating permanent legislation in an an-

nual appropriation act, where, as here, the title covers the subject, is recognized in *DeLoach v. Scheper,* 188 S. C. 21, 198 S. E. 409, and in *Doran v. Robertson,* 203 S. C. 434, 27 S. E. (2d) 714.

The general statutory laws, as set forth in the 1952 Code, are arranged under seventy-two titles, comprising six volumes. Title 4 is captioned "Alcohol and Alcoholic Beverages"; chapter 1 of that title is captioned "The Alcoholic Beverage Control Act"; and Article 6 of that chapter is entitled "Offenses and Enforcement". Title 65 is captioned "Taxation"; chapter 14 of that title is captioned "Alcoholic Beverages"; and Article 2 of that chapter is entitled "License Taxes for Sale of Alcoholic Beverages".

In the compilation of the 1952 Code, Section 14 of the Alcoholic Beverage Control Act, as amended by the 1951 act before mentioned, was broken up and rearranged as follows:

Subsections (a) and (f) were fused into one, as Code Section 4-91.

Subsection (b) was broken into two parts: the first clause, relating to purchase, was codified as Section 4-94; the last clause, relating to possession of alcoholic liquor in unstamped bottles or other containers, was codified under Title 65, as Section 65-1270, reading as follows: "Any person found in possession of any bottle or other package containing alcoholic liquor to which the revenue stamps required by § 65-1267 have not been affixed shall be guilty of a misdemeanor."

Subsection (c) became Code Section 4-95; Subsection (d), Code Section 4-98; Subsection (e), Code Section 4-99; Subsection (g), Code Section 4-102; and Subsection (h), Code Section 4-103.

Subsection (i), prescribing punishments, was made Code Section 4-107, and its language changed to read as follows:

"Every violation of any provision of this chapter shall be a misdemeanor and, upon conviction, shall be punished as follows:

"(1) For the violation of the provisions of §§ 4-94, 4-98 and 4-99 for the first conviction or plea of guilty a fine of not more than one hundred dollars or imprisonment of not more than thirty days, and on each subsequent conviction a fine of not more than one thousand dollars or imprisonment for not more than one year, either or both, at the discretion of the trial judge; and

"(2) For each violation of any other provision of this chapter, except where a different punishment is expressly provided, a fine or imprisonment in the discretion of the court of general sessions".

Appellant was charged with violating the provisions of the last clause of Section 14 (b) of the Alcoholic Beverage Control Act of 1945, as amended, which now appears as Section 65-1270 of the 1952 Code. The language of the indictment admits of no other construction, and the solicitor so concedes in the opening sentence of his brief. And it is contended by the State that, since Section 65-1270 in itself prescribes no penalty for its violation, we must find the penalty either in Section 4-107(2) or in Section 17-553, which provides that "in cases of legal conviction when no punishment is provided by statute the court shall award such sentence as is conformable to the common usage and practice in this State, according to the nature of the offense, and not repugnant to the Constitution". The issue must be resolved by determination of the effect of the codification, as hereinbefore mentioned, of Section 14 (b) of the Alcoholic Beverage Control Act of 1945, as amended.

In the codification of a statute, the mere rearrangement of its sections, or the combination of several of its sections into one code section, or the breaking up of one of its sections into several code sections, with no substantial change in phraseology, does not change the meaning, purpose, operation or effect thereof unless an intention to do so clearly appears. 82 C. J. S., Statutes, § 276, p. 467; 50 Am. Jur., Statutes, Sec. 470, p. 483;

*Independence Ins. Co. v. Independent Life & Acc. Ins. Co.,*
218 S. C. 22, 61 S. E. (2d) 399.

" 'Where a statute is embodied in a revision or codification without subsequent [substantial?] change of language, it is considered as a continuance of the old law with the same meaning and effect, and is not a new and original enactment, unless there is a plain indication of legislative intent to alter the law; and a mere separation of sections of an act and a rearrangement of them in different connections does not, in the absence of intent so to do, change the purpose, operation and effect of the original statute' ". *State ex rel. Ortlip v. Du Pont,* 3 Terry, Del., 540, 40 A. (2d) 453, 455, quoting from *Nigro v. Flinn,* 8 W. W. Harr. 368, 38 Del. 368, 192 A. 685. To the same effect is *Trites v. City of Melrose,* 318 Mass. 378, 61 N. E. (2d) 656. And the same principle has been applied where code sections have been rearranged in subsequent compilations of the statutes. *Hale v. Iowa State Board of Assessment and Review,* 302 U. S. 95, 58 S. Ct. 102, 82 L. Ed. 72; *Bloodworth v. Jones,* 191 Ga. 193, 11 S. E. (2d) 658.

In codification, as distinguished from amendment, of a statute, changes in phraseology, or the omission or addition of words, do not necessarily require a change in the construction of the earlier act. "Indeed, the rule favoring the construction borne by the original statutes or sections is applied, even though in the course of revision or consolidation the language may have been somewhat changed, and the revised or consolidated statutes will be construed as bearing the same meaning as the original statutes or sections, unless the language of the revision or consolidation plainly requires a change of construction to conform to the manifest intent of the legislature. These rules are based upon the fact that the new language may be attributed to a desire to condense and simplify the law, or to improve the phraseology." 50 Am. Jur., Statutes, Sec. 447, p. 465; *Miller v. State ex rel. Peek,* 1947, 249 Ala. 14,

29 So. (2d) 411, 172 A. L. R. 1356, *Town of Forest Acres v. Seigler,* 224 S. C. 166, 77 S. E. (2d) 900.

"In case of doubt and uncertainty as to the meaning of a provision of a code or of compiled or revised statutes, resort in ascertaining its true meaning may properly be had to the act from which the provision was derived * * *. This rule is particurly applicable where the code is not subject to a fair construction without consideration of the original statute". 50 Am. Jur., Statutes, Sec. 446, p. 464.

Thus in *Waara v. Golden Turkey Mining Co.,* 1943, 60 Ariz. 252, 135 P. (2d) 149, 151, 149 A. L. R. 677, where, in the codification of a statute giving a lien on mines and mining claims for labor and materials, the words "and others who may labor", which appeared in the statute, had been omitted from the code section in which the statute had been embodied, the court said: "The revision of 1928 was not intended to change the meaning of the law but to simplify and reduce the language. * * * The omission of the italicized words from the revision, instead of clarifying something in doubt, only cast doubt where before it was clear. The revised section should read as it was before the revision, otherwise those evidently intended to have liens for their labor might not be protected. It is but common sense and entirely in consonance with the purpose of the law to supply in the revision the omitted words * * *."

And in *Elk River Coal & Lumber Co. v. Funk,* 222 Iowa 1222, 271 N. W. 204, 209, 110 A. L. R. 1415, where the phrase " 'as by this act provided' " was changed in the codification to read " 'as by this chapter provided' ", it was held that the phrase last quoted referred to the entire act rather than to the particular chapter of the code, such construction being necessary to effectuate the legislative intention.

In *Town of Forest Acres v. Seigler, supra* [224 S. C. 166, 77 S. E. (2d) 906], the court quoted with approval from *Dennis v. Independent School Dist.,* 166 Iowa 744, 148

N. W. 1007, as follows: " 'It is a rule of construction that changes made by a revision of the statutes will not be construed as altering the law, unless it is clear that such was the intention, and, if the revised statute is ambiguous or susceptible of two constructions, reference may be had to prior statutes for the purpose of ascertaining the intent of the Legislature' ". In that case ambiguity was apparent as the result of a change in the original language of a statute in its incorporation in the 1942 Code and a further change in the 1952 Code.

Coordinate with the foregoing rule, and equally to be respected, is the rule that where the meaning of a code provision is plain and unambiguous the court cannot recur to the original statute for the purpose of ascertaining its meaning. *Independence Ins. Co. v. Independent Life & Acc. Ins. Co., supra; Town of Forest Acres v. Seigler, supra*. The ambiguity must be apparent in the revised version itself; resort to the original enactment must be for the purpose of solving, not creating it. *Hamilton v. Rathbone*, 175 U. S. 414, 20 S. Ct. 155, 44 L. Ed. 219. Corollary is the rule that a general statute omitted from the code, albeit through error or inadvertence, is lost. *State v. Meares*, 148 S. C. 118, 145 S. E. 695.

Bearing in mind the rules of construction before mentioned, examination of Section 14 of the 1945 Act as amended by the 1951 Act and incorporated in the 1952 Code leads us to the following conclusions:

1. The fact that the first clause in Subsection 14(b), relating to the purchase of alcoholic liquor, was codified under one title, and the last clause, relating to possession of liquor in unstamped containers, was codified under another, did not of itself change the penalty for violation of the latter clause from that provided in Subsection (i) (1) of Section 14 of the original statute. Such a breaking-up of Subsection 14(b) was merely rearrangement.

2. The codification of Subsection 14(i) (1) as Section 4-107 (1) involved a substantial change in its phraseology and meaning, for it omitted reference to the last clause of Subsection 14(b) and expressly made the limited penalties applicable only to purchase, 4-94, employment of minors, 4-98, and drinking on the premises of a liquor establishment, 4-99. We note also, through it does not directly affect our decision of the instant case, that while the amendatory act of 1951 prescribed a penalty for "each subsequent conviction or plea of guilty", the words "or plea of guilty" in relation to second and subsequent offenses do not appear in Section 4-107(1).

3. There is no ambiguity in the language of Section 4-107 of the 1952 Code.

4. Whether violation of the provisions of Section 65-1270 is punishable under Section 4-107(2) or under Section 17-553 need not now be decided, because in the present case the sentence was within the court's power under either.

We affirm with some reluctance, because of the probability that the changes made in Subsections (b) and (i) (1) of the 1945 Act in the course of their codification were inadvertent rather than deliberate. Well-established rules of statutory construction, however, leave us no alternative. If the plain language of Section 4-107(1) of the Code does not correctly express the intention of the General Assembly, its amendment is a legislative, not judicial, matter.

Affirmed.

STUKES, TAYLOR and OXNER, JJ., and J. WOODROW LEWIS, Acting Associate Justice, concur.