29 So.2d 411

**MILLER v. STATE ex rel. PEEK.**

7 Div. 895.

Supreme Court of Alabama.

Feb. 13, 1947.

W. D. DeBardelaben and Richard B. Emerson, both of Anniston, and Hill, Hill, Whiting & Rives, of Montgomery, for appellant.

Knox, Liles, Jones & Woolf and Merrill, Merrill & Vardaman, all of Anniston, for appellee.

18

LIVINGSTON, Justice.

This is an action in the nature of quo warranto (section 1136, Title 7, Code of 1940), instituted in the name of the State on relation of J. L. Peek, and J. L. Peek, individually (section 1142, Title 7, Code), against Cecil C. Miller, charging him with usurping, intruding into and unlawfully holding the office of director of traffic and law enforcement, for the city of Anniston, a public office, without warrant or authority of law.

In pertinent part, the complaint alleges:

"3.   That the respondent, Cecil C. Miller, has usurped, intruded into and unlawfully holds without warrant or authority of law the office of director of traffic and law enforcement for the city of Anniston, Alabama, a municipal corporation, and claims to be clothed with the powers and privileges of said office, and is exercising the powers and functions of the same; that the said office of director of traffic and law enforcement for the city of Anniston, Alabama, which is a public office, was created or attempted to be created by resolution of the board of commissioners of the city of Anniston, Alabama, which said resolution is in words and figures as follows:

" 'A Resolution No. 744.

" 'Be it resolved, by the board of commissioners of the city of Anniston, Alabama, as follows:

" 'Section 1: The office of chief of police of the city of Anniston, Alabama, is hereby abolished.

" 'Section 2.   The office of director of traffic and law enforcement for the city of Anniston, Alabama, is hereby created.   The duties and functions of the said director of traffic and law enforcement shall include, besides those duties and functions heretofore performed by the chief of police of the city of Anniston, the further and special duties of supervising such special traffic officers or traffic co-ordinators that may hereafter be appointed by this commission, charged with the duties of bettering the traffic problems that may now or hereafter exist in the city of Anniston, Alabama, to the end that the lives and property of the citizens of said city may be protected and conserved, and, in addition thereto, the further and special duties that the board of commissioners of the city of Anniston, Alabama, may hereafter confer upon and delegate to said director of traffic and law enforcement.

" 'Section 3.   The chairman of the board of commissioners of the city of Anniston, Alabama, shall have direct supervision over the director of traffic and law enforcement for the city of Anniston, Alabama.

" 'Adopted this, the 8th day of October, 1946.

" 'Approved this, the 8th day of October, 1946.

" 'City of Anniston, Alabama
" 'By /s/   E. D. Banks,
" 'Chairman of its Board of
Commissioners
" 'By /s/   H. B. Glover,
" 'Associate Commissioner
" 'By /s/   S. F. Street,
" 'Associate Commissioner.' "

"The premises considered, plaintiffs pray that the respondent, Cecil C. Miller, be required to show by what warrant or authority he claims the right to hold said office and to exercise the powers and privileges thereof, and by what warrant, right, or authority he does exercise the powers and privileges of said office and holds said office, and that on a final hearing and submission of this cause judgment be entered ousting him, the said Cecil C. Miller, from said office and from holding the same and exercising the powers and privileges thereof.   And the plaintiffs pray for such other, further, special and general relief as they may be entitled to under the facts and circumstances of this case."

Demurrers to the complaint were interposed, and by the trial court overruled.

Respondent insists that there is no allegation that the office of director of traffic and law enforcement is a "public office"; that the averment, "which is a public office," modifies or refers to "the city of Anniston." The office alleged to have been usurped is "the office of director of traffic and law enforcement for the city of Anniston." There is no merit in that argument.

Respondent further insists that, construing the quo warranto petition most strongly against the petitioner, it seeks to remove respondent from a non-existent office. The argument is, that the petition's allegation that the office of director of traffic and law enforcement for the city of Anniston *was created or attempted to be created*" by a resolution passed by the board of commissioners of the city of Anniston, is but the averment of an attempt to create an office, rather than the averment of the existence of an office.

In Hale v. State, 237 Ala. 191, 186 So. 163, 164, it was held:

"We have repeatedly held that an information in cases of this sort is sufficient, 'if it avers in general terms that the respondent usurps, intrudes into, and unlawfully holds a designated public office.' Sharp v. State ex rel. Elliott, 217 Ala. 265, 115 So. 392, 393; Jackson v. State ex rel., 143 Ala. 145, 42 So. 61; Frost v. State ex rel. 153 Ala. 654, 45 So. 203; Longshore v. State ex rel., 200 Ala. 267, 76 So. 33.

"And in the case of State ex rel. Garrett et al. v. Torbert, 200 Ala. 663, 77 So. 37, which was a quo warranto proceeding, this Court held that, while there was no specific prayer to determine whether or not there existed such an office as the County Court of Hale County, yet a determination of that question was involved in the determination of the other questions, viz., whether the respondent was ex officio judge of the court, and, at the same time, clerk thereof.

"Therefore, when one is called upon in quo warranto proceedings to show by what right he exercises, or assumes to exercise, the function of a public office, he must show that there is a de jure office as well as a lawful holding thereof by him, for it is axiomatic that there can be no de jure officer, if there is no de jure office. Jackson v. State ex rel., supra; State ex rel. Little v. Foster, 130 Ala. 154, 30 So. 477."

Here, as in the case of Robinson v. State, 212 Ala. 459, 102 So. 693, the petition followed the language of the statute. The trial court did not err in overruling respondent's demurrer to the petition. See, also, Ferguson v. State, 215 Ala. 244, 110 So. 20.

The respondent answered relator's petition, and, in substance, denied that he had usurped, intruded into and unlawfully holds without warrant or authority of law the office of director of traffic and law enforcement for the city of Anniston, in that (1) said office was legally and lawfully created by the board of commissioners of the city of Anniston by the resolution set out in the petitioners' petition, and that he held said office by virtue of a legal and valid resolution of the said board of commissioners of the city of Anniston appointing him to that office; (2) that said office was legally and lawfully created by the board of commissioners of the city of Anniston by an ordinance, duly and legally adopted by said board of commissioners abolishing the office of chief of police of the city of Anniston and creating the office of director of traffic and law enforcement for the city of Anniston, and by an ordinance duly and legally adopted by said board appointing respondent to the office so created. The minutes of the meetings of the board of commissioners, at which said resolutions and ordinances were adopted, together with the resolutions and ordinances are set forth in the answer.

The trial court sustained petitioners' demurrers to respondent's answer.

Two substantial questions are here presented. The first is, whether or not Anniston, Alabama, is governed by the civil service laws set forth in sections 391–414, inclusive, Title 62, Code of 1940. The other assumes Anniston to be governed by the civil service laws of the State, and is whether or not the resolution and ordinances involved in this case are void because they

show they were intended to evade the operation of the civil service laws.

The answer to the first question is to be determined by a proper construction of section 402, Title 62, Code, of the civil service laws, and section 420, Title 62, Code, of the commission form of government laws, as they apply to the city of Anniston. In pertinent part section 402, supra, is as follows: "No member of either the police department or of the fire department shall be removed or discharged, nor shall the chief of the police department nor the chief of the fire department, be removed, discharged, or demoted, except for cause, upon written charges or complaint and after an opportunity to face his accusers and be heard in his own defense."

Section 420, supra, provides: "Each such city shall be governed and managed by the board of commissioners as herein provided, and each and every officer and employee of such city except the health officer and such person as may be employed by him to enforce quarantine, and such other officers and employees as are designated in this subdivision, shall be selected and employed by the said board of commissioners, under its direction, and all salaries and wages paid by said city except as otherwise provided, shall be fixed by said board of commissioners; where not otherwise provided, the commissioners shall prescribe and may at any time change the powers, duties and titles of all subordinate officers and employees of said city, except the title of city health officer, all of whom except those herein otherwise specified shall hold office and be removable at the pleasure of the board of commissioners."

The foregoing Code sections are derivatives of the following legislative acts. The original Commission Form of Government Act was introduced in the 1931 Legislature by Representative Culver of Gadsden, and was adopted on March 6, 1931, Gen. Acts 1931, p. 174 et seq. It was a general act, applying to cities having a population of 24,000, and less than 40,000. Anniston had less than 24,00 at that time, and did not come under this Act. The original Civil Service Act was introduced in the 1931 Legislature by Representative Mize of Tuscaloosa. It was adopted on August 4, 1931,

Gen. Acts 1931, p. 676 et seq., some five months *after* the adoption of the Commission Form of Government Act. It, too, was a general act, and applied to cities operating under a commission form of government and having a population of as much as 20,000, and less than 50,000. Since Anniston was not under a commission form of government, it did not come under this Act. On February 17, 1939, the Commission Form of Government Act of 1931 was amended to include all cities between 22,000 and 60,000. Gen. Acts 1939, p. 46. This was a general act introduced by Representative Merrill of Anniston, and was ostensibly for the purpose of bringing Anniston under the Commission Form of Government Act. All of the provisions of the 1931 Act, except the population figures, were carried over exactly into this amendment. On the same day, February 17, 1939, the Civil Service Act of 1931 was amended by a companion measure introduced by Senator Lusk of Gadsden. Gen. Acts 1939, p. 44 et seq. This amendment provided that cities coming under the Civil Service Laws in the future would have ninety days within which to reorganize their police and fire departments before being subject to its conditions and benefits. Since Anniston was the only city coming under the Act for the first time by reason of the amendment introduced by Representative Merrill, adopted that same day, its obvious purpose was to allow the city commissioners of Anniston ninety days to organize the police and fire departments of Anniston before those departments went under the Civil Service Act. Anniston went under a commission form of government in February 1939, pursuant to the amendment introduced by Representative Merrill, and adopted on February 17, 1939. Thereafter, on February 29, 1939, pursuant to action of the Anniston City Commissioners on the preceding day, appellee J. L. Peek assumed the duties of chief of police of the city of Anniston. However, the amendment adopted on February 17th, 1939, had not amended the title of the 1931 Commission Form of Government Act, and in the summer session of the 1939 Legislature, Senator Lusk of Gadsden introduced an amendment to the 1931 Commission Form of Government Act which amended its title

and otherwise adopted exactly the same verbiage as the Merrill amendment. This amendment was adopted on August 16, 1939, Gen. Acts 1939, p. 388 et seq, and, except for the difference in the population provisions, was an exact copy of the 1931 Act, supra. In its form it provided that each section of the 1931 Act "is amended to read as follows," and then restated the exact words and punctuation of the various sections of the 1931 Act.

In March 1939, an act providing for the policemen and firemen's retirement fund was adopted for class "D" cities. Gen. Acts 1939, p. 131 et seq. This Act was applicable to Anniston as well as the other cities concerned, and its provisions, including a monthly contribution of two percent of the salary of all policemen and firemen, were made effective in Anniston at that time, and still remain in effect. These acts were general acts, with local application, based on a population classification according to the last federal census or any subsequent census.

Applying the general rules of construction to the aforesaid acts, as amended, no difficulty is encountered in harmonizing them and giving a field of operation to both the Civil Service Act and the Commission Form of Government Act. This is because of the difference in the population basis, or the difference in the application of the two acts. To illustrate, a city of 21,000 population in 1930 would not come within the influence of either act. It is not within the population basis of the Commission Form of Government Act, and that Act could not apply, and the Civil Service Act could not apply because it applied only to cities operating under the Commission Form of Government Act. The same city with a population of 51,000 in 1940 would be within the population basis of the Commission Form of Government Act, and that Act would apply. But the Civil Service Act could not apply because the population is beyond the limits of that Act. It is therefore manifest that each act had a field of operation prior to the adoption of the 1940 Code, and in cities coming under both acts it would be the duty of the Court to apply the provisions of section 402, supra, in order to leave a field of operation for both acts.

Otherwise, to apply section 420, supra, in such a case, would completely destroy section 402, supra. In fact, such a construction would completely nullify the whole civil service law.

We have held, in effect, that these acts were "frozen" as local acts by the adoption of the Code of 1940. See In re Opinion of the Justices, 244 Ala. 384, 13 So.2d 762. The Civil Service Act, as carried into the Code of 1940, applies only to the cities of Anniston, Gadsden and Tuscaloosa. The Commission Form of Government Act, as carried into the Code of 1940, applies only to the cities of Anniston and Gadsden: Tuscaloosa being governed by an Act applying to Tuscaloosa alone. What then, was the result of freezing these acts as local acts by the adoption of the Code of 1940?

As to the chief of police, chief of the fire department, and policemen and firemen of the city of Anniston, we are unable to reconcile the provisions of sections 402 and 420, Title 62, Code; and the question is, which shall prevail?

█ The solution of the question rests of course upon a proper construction of the two sections, so as to arrive at the true legislative intent, and to leave to each some field of operation, if possible. Two well known rules of construction determine the question in favor of section 402, supra. When a doubt or ambiguity result from codifying a statute or statutes, the Court will refer to the original enactment or enactments, and give effect to its or their provisions as originally framed, notwithstanding a change in the phraseology, unless a clear intention is manifest to change its operation and effect. East Tennessee, V. & G. R. Co. v. Hughes, 76 Ala. 590; Jackson County v. Derrick, 117 Ala. 348, 23 So. 193; Griffin v. Fowler, 17 Ala.App. 44, 81 So. 426; Ex parte, Fowler, 203 Ala. 98, 82 So. 112. As indicated above, when reference is had to the original enactments under consideration, all doubts as to their purpose and scope are removed.

█ Another applicable rule in such cases is stated in Herring v. Griffin, 211 Ala. 225, 100 So. 202, 203, as follows:

"The general rule as to such construction applicable to questions of this character is

found stated in Pepper v. Horn, 197 Ala. 395, 73 So. 46; quoted from City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159, as follows:

" 'Special provisions relating to specific subjects control general provisions relating to general subjects. The things specially treated will be considered as exceptions to the general provisions.'

"In City Council of Montgomery v. [National] Bldg. & Loan Ass'n, 108 Ala. 336, 18 So. 816, the same principle of construction is found stated in the following quotation there approved:

" 'When the law descends to particulars, such more special provisions must be understood as exceptions to any general rules laid down to the contrary; and the general rules must not (vice versa) be alleged in confutation of the special provisions.' "

So, applying this rule to the instant case, we find that the legislature has made special provision as to policemen and firemen of the city of Anniston. Section 420, supra, of the Commission Form of Government Act is a general provision covering all employees of the city, and insofar as the policemen and firemen are concerned must give way to section 402, supra, of the Civil Service Law. This leaves ample room for the operation of section 420, supra, in respect to all other city employees, except those specially taken without its operation by the section itself.

Unquestionably this is the construction put upon these laws by the officials of the city of Anniston between the time of the adoption of the Code and action of the city commission in adopting the resolutions and ordinances resulting in this suit. Such construction is entitled to favorable consideration by this Court. Cole v. Gullatt, 241 Ala. 669, 4 So.2d 412; See, also, 18 Alabama Digest, Statutes ☞219.

Section 402, supra, must be treated and considered as an exception to the general provisions of section 420, supra.

Holding as we do, that section 402, supra, governs the city commission of Anniston as to the chief of its police department, do the resolutions and ordinances involved in this case show that they were intended to evade the operation of the Civil Service Law? It would tax judicial credulity to say that they were not so intended.

The basic rule on this question is well stated in 37 Amer. Jur. 858, as follows: "Tenure of office statutes and civil service statutes do not prevent a bona fide abolition of the office by the municipality. Moreover, statutes to protect the tenure of office of veteran soldiers and sailors will not prevent the abolition of municipal offices. In such cases, however, the office must be abolished in good faith; and *if immediately after the office is abolished another office is created with substantially the same duties and a different individual is appointed, or if otherwise it appears that the office was abolished for personal or political reasons, the courts will interfere."* (Italics ours.)

In Dillon on Municipal Corporations, 5th Ed., section 479, the rule is similarly stated as follows: "The purpose of the civil service statutes and of other laws prohibiting the discharge of employees without cause assigned, notice, and a hearing, is to insure the continuance in public employment of those officers who prove faithful and competent, regardless of their political affiliations. These statutes are not intended to affect or control the power of the city council or the executive officers of the city to abolish offices when they are no longer necessary or for reasons of economy. They are not intended to furnish an assurance to the officer or employee that he will be retained in the service of the city after the time when his services are required. They do not prevent his discharge in good faith without a trial and without notice, when the office or position is abolished as unnecessary or for reasons of economy. But although the operation of these statutes do not prevent the abolition of an office in good faith, the local authorities have no power to discharge an officer or employee of the city upon the pretense that his office is abolished and immediately thereafter assign another person to do the same work which has been done by the discharged employee."

In 37 A.L.R. 816 (Annotation) we find the general rule that "Civil Service Laws cannot be evaded by a sham or pretended

abolishment." At another annotation, in 4 A.L.R. 209, is the following: "Tenure of office and civil service laws cannot be evaded by a sham or pretended abolishment. * * * A prompt recreation of the office, followed by the appointment of a new incumbent, will indicate that the abolishment was a pretense to oust the former incumbent and will be so dealt with by the court."

The rules announced by these writers have been followed by the courts in almost every state in the Union. In the case of Clements v. Commission of City of Birmingham et al., 215 Ala. 59, 109 So. 158, 159, the Birmingham Commission abolished an office under the civil service. The Court recognized the right of the commission to abolish the office "provided the ordinance or resolution to that effect is adopted in good faith." The Court then set out to ascertain to what it would look in determining the question of bad faith, and said as follows:

"In [Soon] Hing v. Crowley, 113 U.S. 703, 5 S.Ct. 730, 28 L.Ed. 1145, the Court said:

"'The rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the Legislatures in passing them, except as they may be disclosed on the face of the acts, or inferable from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments.'

"This, it will be observed, is but an elaboration of the rule that bad faith must be apparent upon the face of the act, and cannot be shown by extrinsic facts. * *

"There is nothing upon the face of this ordinance, or of any contemporary ordinance, which suggests bad faith in its enactment—a purpose to circumvent superior laws; nor is that its natural and reasonable effect—since the result achieved is entirely consistent with lawful and proper purposes on the part of the city commission in its administratration of public affairs."

In the instant case, we have not only contemporaneous action, but all the evidences of bad faith wrapped up in the same resolution. The office of chief of police is abolished and the new office with the same duties is created at the same time, and another incumbent is appointed. Then, apparently recognizing that the newly appointed officer was not appointed pursuant to the civil service laws, further evasive action was taken by attempting to state that he was not a member of the police department. A mere reading of the resolutions and ordinances in this case convinces us of their obvious purpose to evade superior laws, which is what this Court has said constitutes bad faith in their enactment. Certainly that is their natural and reasonable effect. See Wipfler v. Klebes, 284 N.Y. 248, 30 N.E.2d 581; Williams v. City of New Bedford, 303 Mass. 213, 21 N.E.2d 265; City of Phoenix et al. v. Powers, Ariz., 113 P.2d 353; State ex rel. v. City of Seattle, 83 Wash. 91, 145 P. 61; State ex rel. Wettrick v. City of Seattle et al., 115 Wash. 548, 197 P. 782; State ex rel. Womsley v. Mayor of Jersey City, 61 N.J.L. 499, 39 A. 710.

It therefore necessarily follows that the judgment of the trial court is affirmed.

Affirmed.

GARDNER, C. J., FOSTER, LAWSON, SIMPSON and STAKELY, JJ., concur.

BROWN, J., concurs in the result.