299 So.2d 733

**STATE of Alabama**

v.

**FRANCO NOVELTY COMPANY, INCORPORATED.**

**Civ. 223.**

Court of Civil Appeals of Alabama.

Feb. 13, 1974.

Rehearing Denied March 6, 1974.

Willard W. Livingston, Counsel, State Dept. of Revenue, and William H. Burton, Asst. Counsel, State Dept. of Revenue, Montgomery, for the State of Ala.

Hill, Hill, Stovall, Carter & Franco, Montgomery, for appellee.

BRADLEY, Judge.

This appeal involves a dispute between the State Department of Revenue and Franco Novelty Company, Inc. over the question of whether a license tax was due for the operation of coin operated pool tables under Title 51, Section 575 or under Title 51, Section 613, Code of Alabama 1940, as Recompiled 1958.

The evidence shows that appellee, Franco Novelty Co., Inc., was in the business of leasing coin operated vending machines of various types in an area surrounding Montgomery County, Alabama. The machines in question are among the machines so leased. These machines are tables which are used for playing a game with approximately fifteen balls numbered one through fifteen. The object of the game is to knock the balls into one of six pockets by hitting the balls with a cue ball which is larger than the other balls. The playing balls are dispensed to a participant by placing a coin in the proper part of the

table. After the game is commenced, the balls going into a pocket cannot be retrieved except by placing another coin in the machine. These coin operated tables are of various sizes, i. e., the playing surfaces are in dimensions of 36″ x 72″, 39″ x 78″, 44″ x 88″.

The appellee's manager testified that another allied company sold or leased what he termed a "regulation pool table" to pool halls. This table was 4½′ x 9′, had six pockets, rubber counters on the inside of the playing surface, and a slate bottom covered with a green felt cloth covering. The number of balls used was fifteen plus a cue ball. The cue ball was the same size as the playing balls. He stated that the reason for the larger cue ball used in the coin operated tables was to assure the availability of the cue ball to play the game to completion, i. e., the cue ball going in a pocket would not go in the same area as the playing balls and could be retrieved to complete the game, whereas the playing balls could not be retrieved except by the use of additional coins.

The evidence also revealed that the appellee had paid the license tax on these coin operated tables for a number of years, including the years covered by the audit. However, it was shown that the audits of appellee's business were limited to the books and records, and these records listed the tables as "games" or "vending machines for amusement or skill," and that the nature of the particular game being played on these machines could not be ascertained from these records.

The trial court, at the conclusion of the hearing on the appeal to it by appellee from the final assessment made by appellant, made findings of fact to the effect that the game of pool or pocket billiards is played on a table of certain size, with six pockets, fifteen playing balls and a cue ball, all of a certain size, and cue sticks, whereas the coin operated tables in question were of various sizes, none of which were as large as the conventional pool ta-

ble. The playing balls were smaller but the cue ball was larger. The playing balls once knocked into a pocket could not be retrieved for further play except by the use of another coin to release them. It was also found by the trial court that conventional pool is played in establishments operated for that purpose, whereas the coin operated tables are operated in taverns, clubs and restaurants. Furthermore, it was found that the Department of Revenue had acquiesced in the licensing of the tables under the provisions of Section 613, *supra,* and could not ·now require licenses under Section 575, *supra.*

The trial court thereupon concluded that such· acquiescence was highly persuasive that any ambiguity existing between Sections 575 and 613 should be resolved in favor of the taxpayer. Also, since Section 613 was enacted subsequent to Section 575, Section 613 should prevail over Section 575.

Appellant has made five assignments of error, the first of which contends that the trial court erred in finding that the coin operated machines were not "pool tables" within the meaning of Section 575.

Title 51, Section 575, Code of Alabama 1940, as Recompiled 1958, provides in pertinent part as follows:

". . . For each table upon which the game of pool or billiards is played with fifteen balls or more or less, and not pin-pool, twenty-five dollars. . . ."

Title 51, Section 613, Code of Alabama 1940, as Recompiled 1958, as amended, provides in pertinent part as follows:

"For . . . each coin-operated machine for use in entertainment or skill, . . . $8.00 for each machine that may be operated by nickels or coins of a larger denomination; . . ."

It will be noted that the pertinent provisions of Section 575 are very broad in describing a "pool table." All that is required, under the statute, in the way of a pool table is that the game of pool be

played on a table with fifteen balls more or less. It does not say anything about the dimensions of the playing surface, the size of the balls, or how many pockets the table must have on it.

Alabama case law indicates that a pool table can be defined as a table with six pockets on which the game of pool is played with more than four balls. See Sikes v. State, 67 Ala. 77. The Texas Court of Criminal Appeals said:

> "Century Dictionary defines 'pool' as a game played on a billiard table with six pockets, by two or more persons. In the United States the game is played with fifteen balls, each ball numbered, and counting from 1 to 15. The object of each player is to pocket the balls; the number of each ball being placed to his credit." Taylor v. State, 50 Tex.Cr.R. 183, 95 S.W. 119.

The Encyclopedia Britannica, Vol. 3, pp. 611–616, 1963, provides in part as follows:

> "BILLIARDS, an indoor game of skill, played with various numbers of balls and a long stick, called a cue, on a rectangular table that may or may not have pockets.

> "In the modern form of this game, the playing surface is covered with a tight-fitting green cloth and surrounded by rubber-cushioned rails.

> "The various games of billiards include pocket billiards, more commonly called pool, played with 15 coloured number balls and a white cue ball on a table with 6 pockets; . . .

> "C. POCKET GAMES

> \*   \*   \*   \*   \*   \*

> "Pocket games are played on billiard tables that are twice as long as they are wide and have six pockets, or openings —one in each corner of the table and one in the centre of each side rail. Most of these tables also contain ball returns to bring the balls from the individual pockets back to a rack at the end of the table, and sometimes are known as subway or gully tables.

> \*   \*   \*   \*   \*   \*

> "2. Pocket Billiards or Pool.—The game of pocket billiards, commonly called pool and by far the most popular of all the billiard games, has a large number of players, particularly amateurs, in the United States. A white cue ball and 15 coloured number balls are used, with the balls from 1 to 8 in solid colours and from 9 to 15 striped. The fundamental object of pocket billiards is to pocket the object balls.

> "Basic pocket billiards can be played by individuals or sides. One individual or side seeks to pocket eight balls before the opponents do. On all strokes following the opening shot, the player must call the ball or balls he intends to pocket, although he is not compelled to call the pocket.

> "Rotation, a popular game with the average amateur player, requires that the 15 object balls be pocketed in numerical order. The individual or side first scoring 61 points wins the game.

> "There are a number of other games of pocket billiards. Among those recognized with formal rules by the Billiard Congress of America are 15-ball pocket billiards, eight ball, line-up, bottle pocket billiards, cowboy, cribbage, forty-one, golf, Mr. and Mrs., one and nine balls, baseball, and poker pocket billiards. . . .

> \*   \*   \*   \*   \*   \*

> "B. NORTH AND SOUTH AMERICA

> "Two basic types of billiards are played extensively in North and South America: carom billiards and pocket billiards, or pool. They can be easily distinguished by the tables on which they are played; pool tables have pockets at each corner and in the centre of the long rails (sides) and carom tables have no

pockets. The rectangular tables for both forms must be twice as long as they are wide; 4-by-8-ft., 4½-by-9-ft., and 5-by-10-ft. sizes are authorized."

In view of the broad language of Section 575, and the absence of authority that a pool table must be of a certain size, we must conclude that the tables upon which the game of pool was played in this case are pool tables within the meaning of said section. We hold that the trial court erred as a matter of law in concluding otherwise.

Even though we have concluded that these devices are tables upon which the game of pool can be played, the question still remains as to whether they can be classified as anything other than pool tables as defined in Section 575, *supra.*

In looking at the language of Section 613, *supra,* we note that it is as broad as the language relating to pool tables as set out in Section 575, for it is there provided that a license tax is imposed on, ". . . each coin-operated machine used in entertainment or skill, . . ." However, appellant says that Section 613 does not provide for a license tax on coin operated pool tables for the reason that said section is a general taxing statute directed to a broad class of taxation subjects, while Section 575 is directed to a specific subject. Appellant suggests that in such a situation the specific controls the general and cites the case of Miller v. State, 249 Ala. 14, 29 So. 2d 411. We acknowledge the continuing validity of this rule of statutory construction, but we do not think it is applicable in this situation. In order for that rule to be applicable here, Section 575 would have to relate exclusively to coin operated pool tables, thus giving it a specific application to the general vending machine statute. That is not the situation now before us. Section 575 does not solely cover coin operated pool tables. However, Section 613 does encompass a coin operated pool table, for it specifically provides, "For . . . each coin-operated machine used in entertainment or skill, . . ." Without fear of contradiction, we believe we can say that

the game of pool is entertaining and requires considerable skill. Therefore the coin operated tables in question certainly come within the purview of Section 613.

■ The question now arises as to which section, i. e., Section 575 or 613, governs in this particular situation. The Supreme Court has said that a license tax can be placed on two or more different businesses, but the taxpayer should not be required to pay the tax on the same business under two different classifications, City of Birmingham v. Hoffman & Robinson, 262 Ala. 104, 77 So.2d 354. Consequently, appellee should not be liable for license taxes under two different sections of the taxing statutes for the same pool tables.

■ When taxing statutes are ambiguous, the construction adopted will be that which favors the taxpayer, State v. Acker, 45 Ala.App. 574, 233 So.2d 514. In the present controversy, a construction which would be favorable to the taxpayer would be one requiring appellee to pay the license tax required by Section 613 for the reason that it is the less expensive of the two taxing provisions. Appellee has already paid the license tax under Section 613 and contends that this fulfills the demands of the law. We agree.

■ However, we do not rest our decision solely on the above conclusion. Section 613 was enacted as a comprehensive plan for licensing all kinds of coin operated vending machines, and it was enacted several years after the passage of Section 575. Prior to the enactment of legislation regulating coin operated pool tables, such tables could have been taxed under Section 575; however, we have concluded that since the enactment of Section 613 they are taxable under its provisions. This conclusion is premised on the rule that the last expression of the Legislature controls. State v. Crenshaw, 287 Ala. 139, 249 So.2d 622.

Appellant argued that the trial court erred in stating that the Department of

Revenue had acquiesced in appellee's payment of license taxes under Section 613; however, in view of our conclusions on other aspects of this case, this issue is no longer relevant and does not require our attention. We do not wish to be interpreted as saying we approve of the trial court's conclusion, just that it is no longer an issue to be discussed.

No reversible error having been argued, this case is affirmed.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.