According to the court's opinion, the purpose of civil service legislation is "to achieve the goals of stability, continuity and security in the various job classifications within a municipality." This formulation is over-broad and, if applied literally, would unduly restrict the power of municipalities to reorganize personnel for reasons of economy. The actual statutory purpose of such legislation is a narrower one: to limit political control and arbitrary discretion in public employment, making it easier to attract and retain employees on the basis of merit. See Miller v. State ex rel.Peek, 249 Ala. 14, 29 So.2d 411, 417 (1947). See generally, 3 McQuillen, The Law of Municipal Corporations, §§ 12.76, 12.111, 12.120 (3d ed. 1982). The City of Tuscaloosa's action in no way frustrates this purpose, since the city has demonstrated, as the court recognizes, an economic justification. "Civil service acts . . . are not intended to retain in office at public expense those whose services may be dispensed with for economy." Id., § 12.111 at 432. Accord Miller v. State, supra.
However, even though in this instance the city acted in good faith to achieve a legitimate goal, the means it chose were not authorized by the civil service laws. The city's action amounts to the creation of a new civil service classification. Only the legislature and not this court may authorize such an action. *Page 1250 
This decision should be viewed as a narrow one; it does not foreclose consideration of whether other municipal actions similarly "legislate" new civil service classifications. SeeMoncrief v. State, 593 S.W.2d 312 (Tex. 1980) (no bad faith where city saved money by replacing civil service custodians with independent contractor), Annot. 87 A.L.R.2d 1165 (1978), 4 McQuillen, supra, §§ 12.246-12.248d.