[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 04, 2010
JOHN LEY
ACTING CLERK

_____

No. 08-11978

_____

D. C. Docket No. 07-00190-CV-W-N

WILLIAM CLARK,
THOMAS FIGURES,
JOE L. REED, Dr.,

Plaintiffs-Appellants,

versus

BOB RILEY,
Governor, in his official capacity,
ELTON DEAN,
in his official capacity as Chair of the Board of
Trustees of Alabama State University,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(February 4, 2010)

Before TJOFLAT, CARNES, Circuit Judges, and HOOD,[*] District Judge.

TJOFLAT, Circuit Judge:

In this case, Dr. Joe L. Reed, a member of the Board of Trustees for Alabama State University, seeks a declaratory judgment that an age limit in Ala. Code § 16-50-20(a) prohibiting a board member from serving beyond September 30 following his seventieth birthday does not apply to him for two reasons: first, § 16-50-20(b) creates an exception shielding him from the age limit; second, and alternatively, the age limit is facially unconstitutional because it denies persons over seventy years of age the equal protection of the laws guaranteed them by the Fourteenth Amendment to the United States Constitution. The district court rejected both reasons and denied relief.[1] Reed now appeals. We affirm.

I.

Before turning to the reasons for our decision, it is helpful to describe the statute at issue and to explain the proceedings in the district court.

A.

---

[*] Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1] The court dismissed Reed's complaint for failure to state a claim for relief and, at the same time, denied Reed's motion for summary judgment.

Alabama Code § 16-50-20 governs the composition of the Board of

Trustees for Alabama State University ("ASU").[2] Prior to 1986, the trustees

---

[2] In full, § 16-50-20 reads,

(a) There is hereby created a Board of Trustees for Alabama State University, the state educational institution at Montgomery, Alabama. The board of trustees shall consist of two members from the congressional district in which the institution is located and one member from each of the other congressional districts in the state as constituted on October 6, 1975, and who shall reside in that district, four members from the state at large who shall reside in different districts, and the Governor, who shall be ex officio president of the board. Except for a trustee at large, the position of any trustee shall be vacated at such time as he shall cease to reside in the district from which he was appointed. The trustees shall be appointed by the Governor, by and with the advice and consent of the Senate, in such manner that the membership shall consist of at least a majority who are alumni and who have received a bachelor's degree from the said university; at least one-half of the board shall be from the prevailing minority population of the state according to the last or any succeeding federal census. Trustees shall hold office for staggered terms of three, six, nine and 12 years with an equal number appointed to like terms, such period of terms designated by the appointing authority, with one-fourth to expire every three years, or until their successors are appointed. All appointments shall be effective until adversely acted upon by the Senate. Provided, however, no trustee who is currently serving on the board or whose term has just expired, who has been previously confirmed by the Senate, shall be required to be reconfirmed for the new term under this section, once appointed by the Governor. A member may be appointed to serve a second term of 12 years, but no member shall be appointed to serve as trustee for more than a total of two terms. The first members, however, shall be eligible to serve for two full additional terms in addition to their initial terms. No trustee shall receive any pay or emolument other than his actual expenses incurred in the discharge of his duties as such. No member of the governing board or employee or student of any public postsecondary education institution, no elected or appointed official having the power of review of the Alabama State University budget, other than the Governor and no employee of the State of Alabama shall be eligible to serve on the board. No member shall serve past September 30 following his seventieth birthday.

(b) No trustee who is serving on the said board on April 30, 1986, shall lose his or her seat because of this section; provided, however, the Governor may re-designate the period of the term of these members so as to conform to the

3

served staggered six-year terms, with one-third of the terms expiring every two years.  The governor had the power to appoint trustees and could reappoint each trustee to serve one additional six-year term.  See 1975 Ala. Laws 1581 (creating §16-50-20); 1983 Ala. Laws 878 (amending § 16-50-20 in ways not material to this case).  In 1986, Alabama's legislature amended this statute to increase the number of trustees on the board, to increase the trustee terms from six years to twelve years, and to stagger the terms to expire every three years instead of every two.  1986 Ala. Laws 1051.  The governor retained his appointment power.  Id. To implement the new staggering scheme, the governor had the authority to divide the trustees—those on the old board[3] plus those appointed to fill the newly created seats—into four even groups serving initial three, six, nine, and twelve-year terms. These initial trustees (the new board) were eligible to serve two full twelve-year terms in addition to their initially designated terms (presumably because most of their initial terms were for less than twelve years to create the staggering scheme).

---

provisions of subsection (a).

Ala. Code § 16-50-20.

[3]  The members of the old board as of April 30, 1986, such as Reed, are the trustees implicated in his claim that Ala. Code § 16-50-20(b) exempts him from the § 16-50-20(a) age limit.  For convenience, we sometimes refer to those trustees as the "1986 trustees."

Trustees succeeding the initial trustees (each of whom would be appointed for twelve years) could be reappointed to serve a second twelve-year term. Id.

In addition to requiring staggered terms, § 16-50-20(a) imposes other limits and requirements on the trustees. For example, one trustee must be drawn from each congressional district in Alabama (two are drawn from the district in which ASU is located), and four members are drawn from the state at large; the members drawn from the state at large must all reside in different districts; trustees representing congressional districts automatically vacate their seats if they move out of their district; a majority of the trustees must be ASU alumni; trustees may not be paid except to cover the expenses incurred in the course of their duties; trustees may not also be employees, students, or trustees of other public colleges; state officials with power over ASU's budget may not be trustees (with the exception of the governor, who is the ex officio president of the board); and state employees may not serve as trustees. The statute also sets out the appointment and confirmation process for the trustees.

Germane to this case, the amended statute retains an age limit, which reads, "No member shall serve past September 30 following his seventieth birthday." Ala. Code § 16-50-20(a). The 1986 amendment also added a new subsection (b) to the statute, which reads in its entirety, as codified, "No trustee who is serving on

5

the said board on April 30, 1986, shall lose his or her seat because of this section; provided, however, the Governor may re-designate the period of the term of these members so as to conform to the provisions of subsection (a)." Id. § 16-50-20(b) (emphasis added). For brevity, we refer to the first clause of subsection (b) (up to the semicolon) as the "exemption clause," and to the second clause as the "redesignation clause." These aspects of the statute—the subsection (a) age limit and subsection (b)—are at issue in this appeal.

B.

Dr. Joe Reed was a member of the ASU board when § 16-50-20 was amended in 1986. On April 30, 1986, the governor designated Reed's term as a twelve-year term to implement the statute's term-staggering scheme. On February 1, 1999, Reed was reappointed to a second twelve-year term.[4] Reed turned seventy on September 13, 2008. According to the age limit in § 16-50-20(a), Reed would not have been able to serve on the board beyond September 30, 2008, even though his second twelve-year term would have lasted longer.

_____

[4] As these dates indicate, Reed was reappointed to his second twelve-year term several months after his first term expired. How this would affect Reed's term is immaterial because the parties do not dispute that Reed was properly seated on the board, and even if Reed's second term runs from the date his first term ended, it would run beyond September 30 following his seventieth birthday.

6

Anticipating this problem, Reed, William Clark, an ASU alumnus, and Thomas Figures, an ASU trustee, brought this action against Bob Riley, the governor of Alabama, and Elton Dean, the chair of the ASU board (collectively, the "Governor") in their official capacities in the Circuit Court of Montgomery County, Alabama, on February 2, 2007. Their complaint challenged the age limit in § 16-50-20(a), as it related to the 1986 trustees, on the ground that § 16-50-20(b) nullifies that limit. They challenged § 16-50-20(a) on the additional ground that it is barred by the Equal Protection Clause of the Fourteenth Amendment in two ways: first, the section discriminates on account of age without a rational basis; second, it treats trustees at ASU differently than trustees at other public universities who are not subject to age limits.

The Governor removed the suit to the U.S. District Court for the Middle District of Alabama because it presented a federal question. The Governor then moved the district court to dismiss the case on the following grounds: (1) Clark's interest as an ASU alumnus was insufficient to provide him with standing to sue; (2) Figures lacked standing because his term would expire prior to his seventieth birthday; (3) Reed's claim was moot because his term had been redesignated under § 16-50-20(b) so as to expire on September 30, 2008, just as it would under the

7

age limit provision;[5] and (4) the age limit in § 16-50-20(a) did deny persons over seventy the equal protection of the law under the Fourteenth Amendment. The district court granted the motion as to Clark and Figures, deferred ruling on the question of whether Reed's claim was moot, and denied the motion as to the equal protection claim. The court then instructed Reed to amend his complaint to respond to the mootness issue.

Reed amended his complaint[6] and, at the same time, moved the court for summary judgment. The Governor countered with a motion to dismiss the complaint for failure to state a claim for relief. In an order entered on March 31, 2008, the district court found that the term "section" in subsection (b) created ambiguities and inconsistencies in the statute because if read literally, it would nullify nearly all of the limits imposed on trustees by subsection (a), giving the 1986 trustees in effect lifetime appointments. The court then turned to the legislative history of § 16-50-20, which indicated that the legislature had actually used the word "act," not "section," in subsection (b) in the 1986 amendment to

---

[5] The Governor redesignated Reed's term in a letter he wrote Reed on March 7, 2007, and attached to his motion to dismiss. The Governor lacked authority to redesignate Reed's term in this manner. See infra part III. His attempt to redesignate the term is of no moment, however, because we determine that Reed is subject to § 16-50-20(a)'s age limit.

[6] The amendment effectively eliminated the mootness issue from the case. We refer to the complaint, as amended, as the complaint because it essentially replicated the complaint Reed filed in the Montgomery County Circuit Court.

§ 16-50-20. The court also observed that the legislature passed the 1986 amendment specifically to implement the revised staggering scheme, which would be defeated by reading subsection (b) literally. Accordingly, the district court held that both clauses of subsection (b) should be construed narrowly so as to only apply when the 1986 amendments first took effect.

The district court also held that the age limit in subsection (a) did not deny the 1986 trustees or persons over seventy the equal protection of the laws in violation of the Fourteenth Amendment. The court identified multiple rational bases for treating trustees over the age of seventy differently.[7] The court also found that, contrary to Reed's assertions, two other Alabama Universities' boards had age limits, and thus that ASU trustees were not being treated differently than their counterparts at other Alabama public universities.

Accordingly, the district court denied Reed's motion for summary judgment, granted the Governor's motion to dismiss and entered judgment pursuant to its March 31 order. Reed now appeals the court's judgment, presenting two issues: first, whether § 16-50-20(b) exempts trustees who were on the board when the

---

[7] A sampling of these bases includes "the difficulty in determining which trustees are mentally and physically qualified for the job," "permitting an orderly attrition through retirement," and "reduc[ing] the instances of trustees unexpectedly dying before the completion of their term."

1986 amendments took effect from the age limit imposed by § 16-50-20(a); and second, whether the age limit denies such trustees and others over seventy the equal protection of the laws, either because there is no rational basis for discriminating against such persons over seventy in general, or because there is no rational basis for discriminating against trustees over seventy at ASU but not at other similar Alabama universities.

## II.

"We review de novo the district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam). This case involves the interpretation of a state statute. "In rendering a decision based on state substantive law, a federal court must 'decide the case the way it appears the state's highest court would.'" Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1290 (11th Cir. 2001) (quoting Royal Ins. Co. of Am. v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir. 2001)).

We address at length only the statutory interpretation question. We dispose of Reed's equal protection challenge in the margin.[8]

## III.

Reed argues that the plain language of the statute calls for what the district court termed a "broad/narrow" interpretation of Ala. Code § 16-50-20(b): the

---

[8] Reed argues that the age limit violates the Equal Protection Clause of the Fourteenth Amendment in two ways: first, by discriminating against those over seventy, and second, by treating trustees at ASU differently than trustees at other Alabama state universities. Rational basis review applies because Reed's claim involves neither a fundamental right nor a suspect classification. FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313, 113 S. Ct. 2096, 2101, 124 L. Ed. 2d 211 (1993). Under rational basis review, we uphold legislation "if the classification drawn by the statute is rationally related to a legitimate state interest." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985).

As for Reed's first equal protection argument, the Supreme Court addressed a remarkably similar mandatory retirement provision in Gregory v. Ashcroft, 501 U.S. 452, 470–71, 111 S. Ct. 2395, 2406, 115 L. Ed. 2d 410 (1991). In Gregory, the Court upheld under rational basis review a provision in the Missouri constitution that required that state's judges to retire at the age of seventy. 501 U.S. at 473, 111 S. Ct. at 2408. In the present case, the district court identified multiple reasons for Alabama's age limit that were similar to the rational bases found in Gregory, and the district court correctly concluded that the Alabama age limit satisfied rational basis review.

Turning to Reed's second argument, Reed mistakenly asserted to the district court that ASU was the only Alabama state university whose board had an age limit. In fact, both the University of Alabama and Auburn University have age limits on their trustees. Ala. Const. Art. XIV, § 264 (requiring University of Alabama trustees to retire following their seventieth birthday); id. § 266 (requiring that appointees to Auburn University's board be younger than seventy years old). Reed now argues that there is no rational basis for imposing an age limit on ASU's trustees but not on the boards of all other universities except for Auburn and the University of Alabama. This argument is frivolous. It is well established that "the legislature must be allowed leeway to approach a perceived problem incrementally," Beach Commc'ns, Inc., 508 U.S. at 316, 113 S. Ct. at 2102, and that "[e]vils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think," Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 489, 75 S. Ct. 461, 465, 99 L. Ed. 563 (1955). The Alabama legislature does not violate the Equal Protection Clause of the Fourteenth Amendment by organizing its various universities' boards of trustees differently.

11

exemption language in the first clause should be read broadly to exempt Reed (and any other 1986 trustees) from the age limit in § 16-50-20(a), but the redesignation provision in the second clause should be interpreted narrowly as a one-time grant of power so that the governor could redesignate trustees' terms only in 1986 to establish the statutorily created staggering scheme. The Governor asserts that the language of the original 1986 amendment dictates the "narrow/narrow" reading adopted by the district court: both provisions of subsection (b) were meant to apply only when the 1986 amendments took effect.[9] After our own review of the statute, we are convinced that the district court's so-called "narrow/narrow" interpretation of the statute is the correct one.

Although the Alabama Supreme Court has considered § 16-50-20(a) on multiple occasions, those decisions addressed primarily the appointment and confirmation process for trustees.[10] No opinion of record discusses subsection (b)

---

[9] In the district court, the Governor argued for a "broad/broad" view in which both provisions of subsection (b) apply to Reed. That is, the first clause exempts Reed from the age limit in subsection (a), but the second clause allows the governor to redesignate Reed's term to conform to subsection (a) by setting Reed's term to end when he turns seventy. On appeal, the Governor adopts the district court's interpretation and argues alternatively that the redesignation clause should be read broadly if the exemption clause is read broadly.

[10] See, e.g., Proctor v. Riley, 903 So. 2d 786 (Ala. 2004) (addressing issues relating to the appointment and confirmation process for ASU trustees); Reed v. Bd. of Trs. for Ala. State Univ., 778 So. 2d 791 (Ala. 2000) (per curiam) (addressing eligibility requirements for appointment to the ASU board); Tucker v. Watkins, 737 So. 2d 443 (Ala. 1999) (addressing appointment and confirmation process issues); Watkins v. Bd. of Trs. of Ala. State Univ., 703 So. 2d 335 (Ala. 1997) (same).

12

or the age limit in subsection (a). Therefore, we must attempt to step into the shoes of the Alabama Supreme Court and interpret § 16-50-20 as that court would.

In Alabama, "[t]he fundamental rule of construction is to ascertain and effectuate the intent of the Legislature as expressed in the statute." League of Women Voters v. Renfro, 290 So. 2d 167, 169 (Ala. 1974). "'[T]he court has a duty to ascertain and effectuate legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained.'" Blue Cross & Blue Shield of Ala., Inc. v. Nielsen, 714 So. 2d 293, 296 (Ala. 1998) (quoting Ex parte Holladay, 466 So. 2d 956, 960 (Ala. 1985)). Determining legislative intent begins with the plain language of the statute:

> Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.

IMED Corp. v. Sys. Eng'g Assocs. Corp., 602 So. 2d 344, 346 (Ala. 1992). But plain language will not be followed to the point of absurdity:

> It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable

13

result . . . . It is fundamental . . . that departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question. A construction resulting in absurd consequences as well as unreasonableness will be avoided.

Ex parte Meeks, 682 So. 2d 423, 428 (Ala. 1996) (quoting Norman J. Singer, Sutherland Statutory Construction § 45.11, at 61 (5th ed. 1993)). With these principles of statutory interpretation in mind, we turn to the text of § 16-50-20.

Section 16-50-20(b) reads, in full, "No trustee who is serving on the said board on April 30, 1986, shall lose his or her seat because of this section; provided, however, the Governor may re-designate the period of the term of these members so as to conform to the provisions of subsection (a)." At first blush, the exemption clause plainly says that a 1986 trustee cannot lose his seat on the board because of the age limit in subsection (a). But the implications of reading the clause plainly extend beyond its effect on the age limit. Subsection (a) has many other provisions that would also divest trustees of their seats. For example, trustees representing congressional districts must vacate their seats if they move out of their districts, but under a broad reading of subsection (b), 1986 trustees would be exempt from this provision. They would also be exempt from the conflict of interest requirements, the two-term limit, and even the twelve-year term

14

limit, effectively giving them lifetime appointments to the ASU board and preventing their removal for holding conflicting positions in the state government or other universities. Indeed, Reed's plain-language reading of the exemption clause would undermine nearly the entire ASU board structure established in subsection (a), including the staggering scheme—an absurd result. Surely the legislature would not have intended to revamp significantly ASU's board structure while simultaneously not only exempting every sitting board member from the new requirements, but also giving them in effect lifetime appointments (which were never permissible under the previous board scheme).

If the exemption clause were to be read broadly based on plain language, then the redesignation clause would likewise be read broadly because there is no indication that the two clauses in subsection (b), which are separated by a mere semicolon, should be interpreted differently than one another. The redesignation clause clearly lets the governor redesignate the 1986 trustees' terms to conform with subsection (a). The plain text of the clause contains no limiting temporal language, so at first glance the clause would seem to grant the governor authority to redesignate terms at any time, not just when the 1986 act was initially passed. Conceivably, then, the legislature may have been creating a default rule that

15

exempts 1986 trustees from the requirements in subsection (a) while giving the governor the power to override the exemptions on a case-by-case basis.

But importantly, the governor may only redesignate terms; the redesignation clause does not permit the governor to force a 1986 trustee to vacate his seat. The governor could thus force compliance with the twelve-year term limits and the age limit, but he would still be powerless to enforce the provisions in subsection (a) that do not relate to term length—namely the requirements (already discussed) that one trustee represent each congressional district, the prohibitions on trustees holding certain other positions to prevent conflicts of interest, and the limits on the number of terms a trustee may serve. Moreover, interpreting the redesignation clause this way would upset the carefully crafted staggering scheme and the twelve-year terms because the governor could redesignate terms at will. It is inconceivable that the Alabama legislature would subject its newly created board scheme to undermining in such an arbitrary manner.[11] Because a literal

---

[11] The Alabama Supreme Court, reviewing § 16-50-20 in another context, made a similar attempt to reconcile different provisions of the section. When analyzing the interplay between the appointment and confirmation procedures in § 16-50-20(a) and the governor's recess trustee-appointment powers under § 16-50-25, the Alabama Supreme Court observed that it first would "'consider the statute as a whole and . . . construe the statute reasonably so as to harmonize [its] provisions.'" Proctor, 903 So. 2d at 789 (quoting McRae v. Sec. Pac. Hous. Servs., Inc., 628 So. 2d 429, 432 (Ala. 1993)) (alterations in original). We too read the statute as a whole in an effort to harmonize its provisions.

16

interpretation of subsection (b) would lead to absurd consequences, we turn for guidance, as did the district court, to the legislative history behind § 16-50-20.

The Alabama legislature created § 16-50-20 in 1975, 1975 Ala. Acts. 1581, and amended it in 1983, 1983 Ala. Acts, 878, and 1986, 1986 Ala. Acts 1051. As written in the 1986 Amendment, subsection (b) stated, "No trustee who is serving on the said board on the effective date of this act shall lose his or her seat because of this act; provided, however the governor may re-designate the period of the term of these members so as to conform to the provisions of Section 16-50-20(a)." 1986 Ala. Acts 1052–53 (emphasis added).[12]

The difference between the word "act" used in the amendment and the word "section" that appears in the codified version is significant and demonstrates how the Alabama legislature actually intended subsection (b) to operate. "Section" refers to a portion of the code, whereas "act" refers to the legislative action creating the statute. A "section" operates indefinitely, but an "act" is a transient process, operating only to create the statute. Although the word "act" can be changed to a word like "section" during the codification process, see Ala. Code § 29-7-8(a) ("The Code Commissioner . . . . may . . . . [s]ubstitute the proper

_____

[12] The emphasized phrase "this act" seems to have been changed to "this section" during the codification process. Subsection (a) is codified as it was written in the 1986 amendment.

17

hierarchy unit for the terms 'this act,' 'the preceding section,' and the like."), the two are not always synonymous, and context is important.[13]  As explained supra, for the legislature to have meant that "act" be changed to "section" during the codification process, it necessarily would have to have intended to undermine the very changes that it was making to the ASU board.  Given this context, it is much more likely that the legislature intended that "act" refer to the actual passage of the legislation, thus declaring its intention not to strip any 1986 trustees of their seats in the process of passing the amendment to restructure the ASU board.  The title of the amendment confirms this reading, describing the amendment as an act

> [t]o amend Section 16-50-20, Code of Alabama 1975, as amended, so as to enlarge the membership of the Alabama State University Board of Trustees, prescribe the qualifications, balance, terms of office and appointment; to provide that no current member may be removed as a result of this bill, but allows the governor to redesignate the respective terms of office to conform to the staggered terms.

---

[13]  In his appellate brief, Reed points to Alabama Supreme Court cases purportedly standing for the proposition that the codified version of a statute is dispositive.  It generally is true in Alabama that, "[o]nce the Code Commission modifies an act and the Legislature thereafter adopts a Code containing the modification, the modification has the force of law." Swift v. Gregory, 786 So. 2d 1097, 1100 (Ala. 2000).  In Swift, the Alabama Supreme Court held that the codified version of the statute was "plain and unambiguous."  Id. at 1100.  On the other hand,

> [w]hen a doubt or ambiguity result [sic] from codifying a statute or statutes, the Court will refer to the original enactment or enactments, and give effect to its or their provisions as originally framed, notwithstanding a change in the phraseology, unless a clear intention is manifest to change its operation and effect.

Miller v. State ex rel. Peek, 29 So. 2d 411, 416 (Ala. 1947).  Because the word "section" creates doubt or ambiguity in the statute, normal rules of statutory construction apply and we may look to the original enactment for guidance.

1986 Ala. Acts at 1051–52 (emphasis added).[14]  This original legislative language makes clear that the legislature intended for subsection (b) to apply only when the governor initially implemented the new staggering scheme created by the 1986 amendment.

Viewed in light of the actual enacting legislation, subsection (b)'s operation becomes clear.  The Alabama legislature amended § 16-50-20 to change the structure of and the rules governing the ASU board.  One of those changes altered the staggering of the trustees' terms.  Because there was already a board of trustees governing ASU in 1986, someone had to sort the existing board members into the newly created staggered terms.  The legislature tasked the governor with this reorganization by adding the redesignation clause, but at the same time it included the exemption clause to ensure that no then-sitting trustees lost their seats in the process.  Hence, the legislature included subsection (b) not to give the 1986 trustees in effect life tenures, but rather to provide for an orderly reshuffling of the board.  Accordingly, "the letter of the statute yield[s] to the true meaning and

---

[14]  Section 45 of the Alabama Constitution requires every bill to have a title, which shall clearly express its subject.  Ala. Const. art. IV, § 45.  Alabama courts have used the title of legislation as an aid in interpretation.  See, e.g., Jordan v. Reliable Life Ins. Co., 589 So. 2d 699, 702 (Ala. 1991) ("Clearly, the title of an act may serve as an aid to statutory interpretation."); Hamrick v. Thompson, 165 So. 2d 386, 390 (Ala. 1964) ("[T]he recitals of the title are available aids to the removal of ambiguity or uncertainty in the enacting clause."); State v. Bd. of Revenue & Rd. Com'rs, 80 So. 368, 369–70 (Ala. 1918) (referring to the title of an act to help ascertain its meaning).

intent of the lawmakers." League of Women Voters, 290 So. 2d at 169.

Subsection (b)—both the exemption clause and the redesignation clause—applied

only to the initial reshuffling of the board that occurred when the 1986 amendment

was passed, as clearly indicated by the language of the 1986 amendment.

The district court thus correctly applied its "narrow/narrow" interpretation

to subsection (b) and correctly applied the age limit in subsection (a) to Reed.

IV.

For the foregoing reasons, the judgment of the district court dismissing

Reed's complaint for failure to state a claim for relief is

AFFIRMED.